## CLARK *against* MIX and others.

Where *A* and *B* gave bond to the probate judge, dated *June* 27th, 1837, the condition of which, after counting upon the appointment of *A* and *B*, as trustees of all the goods and estate of certain insolvent debtors, which were assigned for the benefit of their creditors, pursuant to the statute of 1828, by a deed dated the 29th of *April*, 1837, and recorded in the office of the court of probate, required that *A* and *B* should make a true and perfect inventory of all the goods and estate of such insolvent debtors, which had or should at any time thereafter come into their possession, or into the possession of any other person for them; should well and truly administer such goods and estate according to law; and should render a true and just account of their trusteeship, by a limited time; it was held, 1. that this bond, taking all the parts together, was conversant only about the goods and estate assigned, by the deed referred to, as recorded in the probate office; but if otherwise, that, 2. as the terms of the bond were not prescribed by statute, and as it was given voluntarily, it was valid as to the estate assigned, and was void only as to the excess.

Where the replication to an action on such bond, set forth the deed of assignment, its being lodged for record and recorded, the acceptance of the trust, the giving of the bond, and the orders of the court of probate, requiring the trustees to make and return an inventory and appraisement of the estate of said insolvent debtors, to give notice of the time for the appointment of commissioners, and to settle the estate and render their account within a time limited; averred, that certain goods of such insolvent debtors so assigned, came into the possession of the trustees, and remained subject to their controul and disposition; and then averred, that the trustees neglected to comply with such orders; it was held, 1. that the estate thus mentioned and referred to, was the *estate assigned;* 2. the orders of the court of probate were legally

given; 3. that the neglect of the trustees to comply with such orders, constituted a breach of the bond.

*New-Haven,*
July, 1842.

Clarke
*v.*
Mix.

Where the trustees have violated their duty and the obligation of their bond to the judge of probate, by neglecting to take the necessary steps to procure the appointment of commissioners, in consequence of which none have been appointed; it is not competent to the trustees, in an action against them on the probate bond, to object to the proof of debts, which have not been allowed by commissioners. In such case, it is not necessary for a creditor to show a judgment debt, to entitle him to the benefit of the bond.

In an action on a probate bond, of which there has been a breach, the plaintiff is entitled to judgment, without proof of any debt in favour of a creditor.

Therefore, where the replication assigned, as a breach, the non-payment of the debts of certain creditors; the defendants traversed the existence of those debts; the issue was found against them; and thereupon they moved in arrest of judgment, on the ground that the replication had not set out the nature and character of such debts, with sufficient particularity; it appearing, however, from the record, that the plaintiff was entitled to judgment for other breaches, it was held, that the defect alleged, though it might be fatal on a demurrer to that assignment, was not a sufficient ground of arresting the judgment.

Where the replication, in such case, stated debts against the estate, of a certain amount, in favour of *P* and *R* respectively, without setting forth the nature and character of those debts: but other breaches of the bond were well assigned and proved; it was held, that evidence of such debts was admissible on the question of damages. [Two judges dissenting.]

Where the plaintiff, in an action on the probate bond against the assignees, offered in evidence, in connexion with the bond, a copy of the deed of assignment, from the probate office, where it had been recorded, without having given notice to produce the original; and it appeared from the face of the bond, that it was founded upon, and recognized, the assignment; it was held, that such copy was admissible. [One judge dissenting.]

Where the deed of assignment, in such case, so offered in evidence by the plaintiff, purported to have been executed by one of the assignors, by attorney; and the defendants objected that there was no proof of the execution of the power; it was held, that the acknowledgment of the deed in the bond extended to every thing necessary to prove the due execution of the deed, and superseded further proof of the power. [One judge dissenting.]

Where the deed of assignment purported to assign to the trustees all the real and personal property of the assignors, of every description, in this state, except their household furniture, a schedule of which property was to be made out and annexed thereto, as soon as convenient; it was held, that such assignment was not invalid, as against the assignors, either because the description of the property was too general, or because the schedule referred to was not then in existence. [One judge dissenting.]

Where the deed of assignment purported to be executed by *C* and *D* of *N. H.* and *E* of *N. Y.*, and it appeared, that *E* had always resided in *N. Y.*, and the bond counted upon a deed executed by *C & Sons* of *N. H.*; it was held, that this was not a case of variance.

THIS was an action of debt on a bond executed by *William Mix* and *Jesse Peck*, as principals, and *John S. Mitchell*,

New-Haven,
July, 1842.

Clarke
v.
Mix.

as surety, to the plaintiff's predecessor, as judge of probate, dated *June* 27th, 1837.

The defendants prayed oyer of the bond and condition, the latter of which required, that said *William Mix* and *Jesse Peck*, appointed trustees of all the goods, chattels, credits and estate of *Isaac Mix & Sons* of *New-Haven*, which were assigned for the benefit of their creditors, by a deed of assignment, dated *April* 29th, 1837, and recorded among the records of the probate court for the district of *New-Haven*, they being insolvent debtors, should make, or cause to be made, a true and perfect inventory of all the goods, chattels, credits and estate of said insolvent debtors, which had or should come into the hands, possession or knowledge of said trustees, or into the hands or possession of any other person or persons for them; and the same, so made, should exhibit, or cause to be exhibited, into the registry of the court of probate, at or before the 29th day of *June*, 1837; and the said goods, chattels, credits and estate, and all other goods, chattels, credits and estate of the said insolvent debtors, which should, at any time after, come into the hands or possession of said trustees, or into the hands or possession of any other person or persons for them, should well and truly administer according to law; and furthermore, should make, or cause to be made, a true and just account of their trusteeship, at or before the 29th day of *April*, 1838; and all the rest and residue of said goods, chattels, credits and estate, which should be found remaining upon the settlement of said trustees' account, the same being first examined and allowed by the said court of probate, should deliver and pay unto such person or persons respectively, as said court of probate, by its decree or sentence, pursuant to the true intent and meaning of the law, should limit and appoint.

The defendants then pleaded, 1st, the general issue; 2ndly, performance; 3rdly, that no goods or estate of the insolvent debtors ever came into the possession or to the knowledge of the trustees; 4thly, that the assignment was never completed so as to become valid, and was, on the 28th day of *June*, 1837, abandoned and given up, pursuant to an arrangement then made between the assignors and their creditors, with the knowledge and consent of the court of probate; 5thly, that the bond, with the condition thereto, was extra-judicial, ille-

*New-Haven*,
July, 1842.

Clarke
*v.*
Mix.

gal and void; 6thly, that the creditors of the assignors, on the 28th of *June*, 1837, by an instrument in writing, by them signed, sealed and delivered, and lodged with the court of probate, released and discharged the defendants from all claims and demands on them, by virtue of said bond, and from all duties and obligations mentioned in the condition thereof; 7thly, that no debts were proved before commissioners, and so there are no creditors, who have a legal right to any portion of the property assigned; 8thly, that the court of probate never appointed commissioners, and that no creditors ever requested such appointment; and said court has made no order for the payment of debts.

On the 1st, 4th, and 6th pleas, issues were joined to the jury. To the 2nd and 3rd pleas, the plaintiff replied, setting forth an assignment, on the 29th of *April*, 1837, by *Isaac Mix, Thomas Mix* and *Isaac Mix* jr., of all their real and personal property in the state of *Connecticut*, except their household furniture, which assignment was lodged with the court of probate and duly recorded there, on the same day; averring, that the trustees accepted said trust, and with said *Mitchell*, as surety, gave said bond, which was accepted and approved, by said court; that said court directed an inventory and appraisement to be made of the goods and estate assigned; that appraisers were appointed; that the goods and estate of said insolvent debtors assigned to the trustees, came into their hands and possession, to the amount of 50,000 dollars, *viz.* 5 coaches, 5 barouches, &c. [thus specifying sundry articles,] and remained therein, subject to their controul and disposition, of which they ought to have made an inventory; that said court also ordered the trustees to give notice that commissioners on said estate would be appointed on the 2nd *Monday* of *July*, 1837; that no such notice was given by the trustees; that they never made an inventory of said goods and estate, or appropriated them to pay the debts; that they exhibited no account of their doings as trustees to the court of probate, and never settled the estate, but wasted and squandered the same; that said assignors were, on and before the 29th of *April*, 1837, and have since continued to be, indebted to *James Punderford* of *New-Haven*, in the sum of 500 dollars, the same

being a debt of that amount, before that day due to *Henry Ives* and *Robert Ives* of *Hamden* in *New-Haven* county, which was by them assigned to said *Punderford,* of which due notice was given; and that said assignors were also indebted to *William S. Ross* of the city of *New-York,* in the sum of 1500 dollars.

To the 5th plea there was a special demurrer, as not containing any matter in avoidance of the allegations in the declaration, or denying or confessing the same. To the 8th plea there was also a demurrer.

To the 7th plea the plaintiff replied, that *Punderford* and *Ross* were creditors of the assignors, and had right to a share of the estate assigned.

To the 2nd replication the defendants rejoined, traversing the assignment, and also the debts due to *Punderford* and *Ross.* The rejoinder to the 6th replication traversed the assignment and the debts therein specified; that to the 7th denied that the persons therein named were creditors; that to the 3rd averred that no goods or estate came to the hands of the trustees, which could be inventoried; and that to the 6th, that the assignment was never completed. The defendants joined in the demurrers taken to the 5th and 8th pleas.

The cause was tried, on the issues in fact, at *New-Haven, October* term, 1841, before *Waite,* J.

The plaintiff offered in evidence the bond, with the condition annexed, as set forth on oyer, accompanied with proof of the due execution thereof, by the defendants. They objected that it was illegal on its face, and therefore not evidence. The court, however, admitted it.

After having proved the execution and delivery of the bond, the plaintiff, for the purpose of proving the execution and delivery of the deed of assignment from *Isaac Mix & Sons,* offered in evidence, in connexion with the bond, a copy of the probate records of the *New-Haven* probate district, shewing, that on the 29th of *April,* 1837, *Sherman Scovil* appeared in court, and lodged for record an assignment made by *Isaac Mix & Sons* of *New-Haven,* insolvent debtors, for the benefit of all their creditors, of certain estate therein mentioned; which assignment was accepted and approved for record. Then followed the deed in question, which was in these

words: "Know all men, by these presents, that we, *Isaac Mix* and *Thomas Mix*, both of *New-Haven*, and *Isaac Mix* jr., of the city of *New-York*, manufacturers in company, under the firm of *Isaac Mix & Sons*, being largely indebted to divers persons and embarrassed, and unable to meet our liabilities, and wishing to make an equal division of our property among our creditors, in consideration thereof, and of one dollar to us paid, by *William Mix*, Esq., and *Jesse Peck*, both of said *New-Haven*, do give, grant, bargain, sell, assign and deliver to them, the said *Mix* and *Peck*, all our real and personal property, of every description, in the state of *Connecticut*, except our household furniture, a schedule of which property is to be made out and annexed hereto, as soon as may be convenient: to have and to hold the said property, real and personal, to them the said *Mix* and *Peck*, their heirs and assigns, in trust for the equal benefit of all our creditors, in proportion to their several demands, to be proceeded with according to the provisions of the statute laws of this state, in such case provided.

<div style="margin-right:2em;text-align:right;float:right;">*New-Haven,*<br>July, 1842.<br>——<br>Clarke<br>*v.*<br>Mix.</div>

In presence of            *Isaac Mix.* [L. s.]
  *James Punderford,*       *Isaac Mix* jr., by *Isaac*
  *S. H. Scovil.*            *Mix*, attorney. [L. s.]
                        *Thomas Mix.*" [L. s.]

" *New-Haven* county, *ss. New-Haven, April* 29th, 1839. Personally appeared *Isaac Mix, Thomas Mix* and *Isaac Mix* jr., by his attorney *Isaac Mix*, and acknowledged the foregoing instrument to be their free act and deed; the said *Isaac Mix* and *Thomas Mix* individually, and the said *Isaac Mix*, attorney, as aforesaid; before me,

           *James Punderford,* justice of peace."

To the admission of this evidence the defendants objected, on the ground that the original deed should be produced, or its non-production accounted for; and they insisted, that such copy was not evidence for the purpose for which it was offered. The court permitted it, in connexion with the bond, to go to the jury.

The defendants further objected to the last-mentioned evidence, on the ground that the deed of assignment was insufficient and void as an instrument of conveyance, because it did not contain any sufficient description of the property, but

referred to a schedule which was never made or annexed to the deed. This objection also the court overruled.

The defendants further objected to this evidence, because it appeared by the copy, that the deed was executed by *Isaac Mix,* jun. (if at all) by his attorney, *Isaac Mix,* sen., and there was no evidence that *Isaac Mix,* sen., had any power to execute it for *Isaac Mix,* jun. It was admitted by the parties, that, at the time of making the deed of assignment, *Isaac Mix,* sen., *Thomas Mix,* and *Isaac Mix,* jun., were partners, carrying on the business of carriage-makers, under the name of *Isaac Mix & Sons,* and had an establishment at *New-York,* for the sale of their carriages, where *Isaac Mix,* jun., had, for several years, resided, having charge of that establishment. This objection also was overruled by the court.

The defendants further objected, that as it appeared by said copy, that the deed of assignment, (if executed at all,) was executed by *Isaac Mix* and *Thomas Mix* of *New-Haven,* and *Isaac Mix,* jun., of *New-York,* in connexion with proof that *Isaac Mix,* jun., had always resided in *New-York,* and the bond in suit counted upon a deed executed by *Isaac Mix & Sons* of *New-Haven,* the variance was fatal. This objection was overruled.

The plaintiff, for the purpose of proving a debt due from *Isaac Mix & Sons* to *William S. Ross* of *New-York,* at the time of making the assignment, offered in evidence the deposition of *Stephen H. Durbrow ;* to the admission of which the defendants objected, on the ground that, under the issues in this case, the deposition was inadmissible to prove any debt from *I. Mix & Sons* to *Ross;* and that said debt, (if any there were,) could be proved only by a report of commissioners allowing it, or at least by a judgment of a court of competent jurisdiction. This objection was overruled, and the evidence suffered to go to the jury.

The plaintiff, for the purpose of proving a debt due from *Isaac Mix & Sons* to *James Punderford,* at the time of the assignment, offered *Henry Ives* and *Robert Ives,* late partners under the firm of *H. & R. Ives,* to prove, that *I. Mix & Sons* were indebted to them on book ; and that, prior to the assignment, they assigned the book-debt to *I. Gilbert & Sons,* as collateral security for their liability as endorsers of a draft, drawn by *H. & R. Ives* upon, and accepted by, *I. Mix &*

*New-Haven,*
July, 1842.

Clarke
*v.*
Mix.

*Sons ;* and that afterwards, and before the date of the deed of assignment, they assigned the same book-debt to *Punderford* ; that due notice thereof was given to *I. Mix & Sons ;* and that the draft endorsed by *I. Gilbert & Sons,* was subsequently paid, whereby they (*I. Gilbert & Sons*) were saved harmless from their endorsement, and the book-debt so assigned to them as collateral security, became released from their lien thereon. To this evidence the defendants objected, on the ground, that under the issues in this case, it was inadmissible to prove any such debts ; and that they could be proved only, by a report of commissioners allowing them, or, at any rate, by the judgment of a court of competent jurisdiction. The court overruled the objection, and allowed the evidence to go to the jury.

The defendants also objected to the proof of any debt due to *Ross* and *Punderford,* on the ground that there was no averment of the nature and character of such debts, either in the plaintiff's replications, or in any other part of the pleadings ; and that the defendants had no notice of the nature and character of such debts. This objection was overruled.

The defendants further claimed, that the court should instruct the jury, that there could be no evidence of such debts to *Ross* and *Punderford,* except a report of commissioners or a judgment of a court of competent jurisdiction. The court did not so instruct the jury.

The defendants further claimed, from the deposition of *Durbrow* and other evidence, that two notes, described in that deposition, were given by *I. Mix & Sons,* on the 2nd day of *July,* 1838, on the compromise and settlement of a suit brought against them by *Ross,* on a cause of action which he claimed to have had, at the time of the assignment ; and the defendants claimed it to have been proved, that the consideration of these notes was the compromise of said suit ; and they claimed, that the court should instruct the jury, that if they should so find, they should not take into consideration either the original cause of action, or the notes, in their assessment of damages. The defendants also claimed to have proved, that when the notes were given, on the 2nd of *July,* 1838, a part of the consideration thereof was the costs of said suit, and a new indebtedness, contracted by *I. Mix & Sons* with *Ross,* after the date of the deed of assignment ; and the

defendants claimed, that the court should further instruct the jury, that if they should so find, they could not take the notes into consideration, in their assessment of damages. The plaintiff did not claim to recover any thing more, on account of the debt to *Ross*, than what was due to him, at the time of the assignment, and remained unpaid. Upon this subject the court instructed the jury, that if they should find, that these notes were given by *I. Mix & Sons*, for a debt which they owed to *Ross*, at the time of the assignment, such debt had not become extinguished, by the giving of the note ; and they were not precluded, in their assessment of damages, from allowing whatever balance they should find still due upon the original indebtedness from *I. Mix & Sons* to *Ross ;* but if they should find, that any debt, which accrued subsequently to the assignment, or any costs, were embraced in said notes, such debt and costs were to be rejected by them, and no damages allowed on account thereof.

The defendants, on the issue joined on the 4th plea, to prove the facts therein stated, offered in evidence two papers, signed and sealed by said *Ross, H. & R. Ives*, and *I. Gilbert & Sons*, and other persons, creditors of *I. Mix & Sons*, purporting to give them an extension of time for the payment of the several debts due to them respectively, and authorizing the assignees to execute a re-assignment of all the property and effects to them assigned for the benefit of such creditors, and discharging them from all responsibility by virtue of the assignment ; provided, that if all the creditors of *I. Mix & Sons* should not sign and seal one of said instruments, they, and every clause thereof, should be utterly void. The plaintiff claimed that these instruments were insufficient to sustain said plea, because they were not executed by all the creditors of *I. Mix & Sons*, in conformity to the proviso therein contained ; and that *Orla House* and others were creditors of *I. Mix & Sons*, at the time of the assignment and afterwards, and never signed or executed either of said instruments ; and the plaintiff offered parol testimony to establish such claim. To this the defendants objected, on the ground that parol evidence could not be received to prove any indebtedness of *I. Mix & Sons* to said *Orla House* and others. This objection was overruled, and the testimony offered was admitted.

*New-Haven,*
July, 1842.

Clarke
*v.*
Mix.

The defendants further claimed, that the proviso in said instruments did not apply to the direction therein given to the trustees not to execute the trust; and prayed the court so to charge the jury. Upon this point the court instructed the jury, that if they should find, that said instruments were not signed by all the creditors of *I. Mix & Sons,* they would not afford a justification to the trustees in abandoning the trust which they had assumed.

The defendants further claimed, that from said instruments and other acts done by the creditors of *I. Mix & Sons,* they had waived and abandoned all claims under the assignment; and if so, the jury ought to find the 4th issue in favour of the defendants. Upon this point the court instructed the jury according to the defendants' claim; and submitted to them the question, whether there had been such a waiver or abandonment. The court further instructed the jury, that if they should find, that *Ross* and *Punderford* had waived or abandoned their claims under the assignment, the plaintiff was entitled to recover no damages on account of their debts.

The jury returned a verdict for the plaintiff on all the issues submitted to them. The defendants thereupon moved for a new trial. They also moved in arrest of judgment, 1. because there was no sufficient cause of action, alleged in the declaration and replications; 2. because there was no allegation that commissioners have ever been appointed or claims allowed; or that there would be any surplus after payment of taxes and privileged debts; and no such allegation that there are creditors, or as to the nature or character of the debts, as the defendants were bound to notice or answer; nor was there any probate order shown for payment of the debts of *Punderford* and *Ross;* and that upon the whole record the plaintiff was, at most, entitled to but nominal damages.

The case was reserved, upon both motions, for the advice of this court.

*Bissell* and *R. I. Ingersoll,* in support of the motions, contended, 1. That the demurrer to the 5th plea should have been sustained. This brings up for consideration the validity of the bond, which is the foundation of the action. Is this, then, a legal bond? It is an *official* bond; and if the condi-

tion be void, or such an one as the judge has no power to prescribe, the bond is void.    In regard to the bond of an executor or administrator, the law has prescribed the *form*, and the judge has no power to take a bond in any other form.    In this case, the law has not prescribed the form of the bond; but a reference to the provisions of the act of 1828, will show what bond the judge of probate is authorized to take.    By the 2nd section, the judge is authorized to take a bond conditioned that the trustees shall " faithfully perform their duties according to law."    If their duties *as trustees* are performed, the obligation of the bond is discharged.    What, then, are those duties ?    They are, first, to make an inventory of the estate so assigned in trust; and secondly, to perform their duties in regard " to the estate so assigned."    The bond taken requires the trustees to make a true and perfect inventory of all the goods, chattels, credits or estate of said insolvent debtors, which have or shall come to their hands, possession or knowledge, or into the hands or possession of any other person or persons for them, and the same to exhibit before the court of probate; and the same goods, &c., and all *other* goods, chattels, credits and estate of said insolvent debtors, which should, *at any time after,* come into the hands of the trustees ; thus extending the bond to *after acquired* property.    The statute confines the duties of the trustees to the *estate assigned.*    The bond taken extends these duties to *all* the estate of the insolvent debtors, whatever.    The statute requires them to do the duties of trustees, in regard to the estate assigned.    The bond requires of them to administer upon all the estate of the insolvent debtors.    The term *administer* has a precise technical meaning,—*i. e.* taking charge of the goods of a man dying intestate.    1 *Jac. Law Dict.* 42.    Here is a precise and definite trust, created by law ; and the assignees are to execute the duties of *that* trust. The court of probate has imposed, or attempted to impose, upon them, all the duties appertaining to an administrator on the estate of a deceased person.

It is no answer to say, that the bond embraces those duties which the trustees were to discharge, and *so far*, is valid. The reply is, as before suggested, that this is an *official* bond ; and if such an one as the judge had no right to exact of these

trustees, it is *wholly* void.   *Billings* v. *Avery*, 7 *Conn. Rep.* ⎫ *New-Haven,*
236.   *Darling* v. *Hubbell,* 9 *Conn. Rep.* 350.                        ⎰ July, 1842.

It is, however, said, that the bond is to be taken in connex-
ion with the deed of assignment; and that the generality of
expression in the former, is to be restrained, by the terms of
the latter.   This presents a further subject of inquiry.

2. That the deed of assignment is invalid, and is such an
instrument that a legal bond cannot be predicated upon it.
It is of all the debtor's real and personal property in *Con-
necticut*, referring to a schedule which was never made.   Is
such a conveyance valid to protect any property from attach-
ment ?

It is, in the first place, invalid as an instrument of convey-
ance.   *Drakeley* v. *Deforest*, 3 *Conn. Rep.* 272.

Secondly, it is equally so, as the declaration of a trust.
No creditors are named ; and there is nothing on the face of
the instrument to direct the trust.

Thirdly, it is a fraud upon our attachment law.

Fourthly, it is calculated to deceive and defraud creditors.

If, then, the instrument be void, as against creditors, can
the bond, predicated upon it, be of any validity ?

3. That the copy of the deed of assignment, which the
plaintiff offered in evidence, on the trial, was inadmissible.
It is an elementary principle, that the *best* evidence which the
nature of the case admits of, and which is in the power of
the party, must be produced ; and the sources of primary
evidence must be exhausted, before secondary evidence can
be resorted to.   1 *Rosc. Ev.* 3. 47. 26.   1 *Sw. Dig.* 757.
*Call* v. *Dunning*, 4 *East* 53.   What then relieves this case
from the operation of the general principle ?

It is said, that it is a copy of the records of the court of
probate.   It is only necessary to refer to the act of 1828, to
show, that there is nothing in this objection.   The deed of
assignment is to be lodged for record ; and the judge, *or clerk*,
is to enter thereon the time, &c.   This is a mere *ministerial*
act ; and no more makes the copy evidence, than lodging a
deed with the town-clerk, makes a copy of that deed evi-
dence.

It is, however, said, that the defendants are *estopped*, by
the bond, to deny that the deed of assignment was well
executed.

In the first place, they are estopped as to nothing, except the fact, that they are assignees under a deed of assignment. *Howard* v. *Mitchell*, 14 *Mass. Rep.* 241.   *Abbe* v. *Goodwin*, 7 *Conn. Rep.* 377.   *Shelton* v. *Alcox*, 11 *Conn. Rep.* 240.

Secondly, the estoppel, if relied on, should have been pleaded.   1 *Sw. Dig.* 622.   1 *Stark. Ev.* 206.

4.   That if the original deed of assignment, instead of a copy, had been offered, it would not have been admissible.

In the first place, it purported to be executed by *Isaac Mix* sen. for *Isaac Mix* jun., and no authority was shewn.   *Isaac Mix*, sen., had no such power, as *a partner* merely.   It was an instrument *under seal ;* and purported to convey *real,* as well as personal estate, and individual as well as partnership property.   *Gow on Part.* 91. 98.

Secondly, the deed should have been rejected, on the ground of *variance.*   The bond describes the assignors as *Isaac Mix & Sons* of *New-Haven.*   The deed offered in evidence purports to be executed by *Isaac Mix* and *Thomas Mix* of *New-Haven*, and *Isaac Mix* jr. of *New-York :* and there are no averments on the record, which relieve the case from this difficulty.   *Russell* v. *South-Britain Society*, 9 *Conn. Rep.* 508.   *Willoughby* v. *Raymond*, 4 *Conn. Rep.* 130.

5.   That the parol evidence offered to prove the debts set out in the replication to the 2nd and 3rd pleas, was inadmissible, either to show a breach of the bond, or to enhance the damages.

In the first place, it was inadmissible, because the debts were not ascertained, by commissioners ; and no order to pay them had been made, by the court of probate.   No case is to be found, where in an action on the probate bond, an *unliquidated* debt has been proved, for any purpose.   *Minor* v. *Mead*, 3 *Conn. Rep.* 289.   *Willey* v. *Paulk*, 6 *Conn. Rep.* 74.   *Isaacs* v. *Stevens*, 13 *Conn. Rep.* 499.   *Mills* v. *Skinner*, 13 *Conn. Rep.* 436.   See also 13 *Mass. Rep.* 365.   12 *Wend.* 492.   8 *B. & Cres.* 151.   10 *Conn. Rep.* 238.   It is admitted, that in case of a solvent estate, a judgment must be shown.   Why should a different rule prevail, when the estate is insolvent ?   The same difficulties exist, in the latter case, as in the former.   In both, important questions are to be tried collaterally, without notice to the adverse party, and without any apt issue.   The judgment could afford no pro-

tection to the defendant.    The verdict would furnish no rule to the court of probate, in regard to the appropriation of the sum recovered.

Secondly, the evidence should have been rejected, on the ground that the *nature* and *character* of the debts, were not set forth in the replication.    On this point, the case of *Isaacs* v *Stevens*, before cited, is decisive.

[Some other points were suggested and remarked upon, by one of the counsel; but these are the points principally insisted on.]

*Baldwin* and *Kimberly*, contra, contended, 1. That the 5th plea was bad on demurrer, because it attempts to put in issue a mere inference or matter of law.    *Gould's Plead.* 406.    1 *Chitt. Pl.* 573.    19 *Johns. Rep.* 371.

2.  That the 8th plea is insufficient, because nothing appears in the condition of the bond, making the right of recovery to depend upon the appointment of commissioners, or the proof of debts.

3.  That the plaintiff's declaration and replications are sufficient.    In the first place, the execution of the bond and the non-payment of the money, are averred in the declaration.

Secondly, the replication to the second and 3rd pleas, avers the execution of an assignment under the act of 1828 against fraudulent conveyances; the giving of the bond, by the trustees, for the faithful performance of their duties; and the requisite orders of the court of probate.    These are, that the trustees should make and return an inventory; that they should give notice of the time of appointing commissioners; and that they should settle the estate, and render their accounts within a year.    The replication then assigned several breaches, *viz.*, that the trustees never made and returned an inventory, which the statute and the bond expressly require, and which the court ordered; that they never gave notice of the appointment of commissioners, which it was their duty to do under the statute, and which was also ordered by the court; and that they have never settled the estate pursuant to the statute and the order of the court.

Thirdly, no averment regarding the appointment of commissioners, or the allowance of claims, or the nature or character of the debts, was necessary; other breaches being as-

signed, and these being matters which relate only to the damages. *Barruso* v. *Madan,* 2 *Johns. Rep.* 145. *Woods* v. *Rowan,* 5 *Johns. Rep.* 42. *Albany Dutch Church* v *Vedder & al.* 14 *Wend.* 165. *Mix* v. *Page,* 14 *Conn. Rep.* 329. *Clark* v. *Russell,* 2 *Day* 112. *Booth* v. *Patrick,* 8 *Conn. Rep.* 106. The plaintiff is entitled to judgment, on proof of any one breach. *Edwards* v *White,* 12 *Conn. Rep.* 28.

4. That the bond offered in evidence was a legal and valid probate bond.

In the first place, as the statute has prescribed no form of bond in such case, it is sufficient, if it conforms substantially to the requirements of the law. By the statute of 1828, *sec.* 2. it is provided, that the trustees shall give bond conditioned that " they shall faithfully perform their duties according to law." The duties of the trustees are, to make an inventory, and to proceed under the orders of the court of probate, to settle or administer the estate, and to account to the court of probate.

Secondly, if the condition be in itself too comprehensive or general, the reference to the assignment, will restrain its generality. *Hassell & al.* v. *Long & al.* 2 *Mau. & Sel.* 363. 369. & seq.

Thirdly, if there be in the condition to the bond something more than the statute requires, yet if it be not prohibited by the statute, and the bond be voluntary, it is valid. *Waldo* v. *Spencer,* 4 *Conn. Rep.* 77. *Kavanagh* v. *Saunders,* 8 *Greenl.* 422. *Collis* v. *Gwynne,* 7 *Bing.* 423. *Newman* v. *Newman,* 4 *Mau. & Sel.* 66.

5. That the deed of assignment was not void, because it referred to a non-existing schedule. *Bates* v. *Coe,* 10 *Conn. Rep.* 280. *Keyes* v *Brush,* 2 *Paige* 311. *Emerson & al.* v. *Knower,* 8 *Pick.* 63.

6. That the copy of the assignment in the probate records, in connexion with the bond, was admissible to prove the execution and delivery of the deed.

In the first place, the assignment is required by law to be lodged in the probate office and recorded.

Secondly, it contains the authority to the court, as well as to the trustees, for all their subsequent action in the matter ; and, as such, it has been, by the court of probate, judicially proved.

Thirdly, the deed of assignment is referred to in the bond, as matter of record.

New-Haven, July, 1842.

Clarke
v.
Mix.

Fourthly, the bond admits the execution of the deed, and refers to the record for its contents.

Fifthly, the defendants having in the bond admitted the execution of the assignment, they are estopped from denying it. *Com. Dig. tit.* Estoppel, A 2. *Hosier* v. *Searle*, 2 *Bos. & Pul.* 299. *Com. Dig. tit.* Obligation E.

Sixthly, the plaintiff is not bound to plead the estoppel, as the defendants have, by their plea, first brought the matter of estoppel upon the record ; and having closed to the country their rejoinder, they have thus prevented the plaintiff from pleading the estoppel. 1 *Saund. Pl. & Ev.* 38. 304. *Shelton* v. *Alcox*, 11 *Conn. Rep.* 240.

Seventhly, the jury have found the matter of estoppel, *viz.* the execution of the bond ; and this court will not grant a new trial because improper evidence was admitted to prove what need not have been proved at all.

7. That parol proof of the debts of *Punderford* and *Ross* and other creditors, was admissible.

In the first place, no other proof could be had, in consequence of the omission of the trustees to procure the appointment of commissioners, which it was their duty to do. *Warren* v. *Powers*, 5 *Conn. Rep.* 374. 382. *Cony* v. *Williams* & al. 9 *Mass. Rep.* 114. *Smith* v. *English*, 13 *Conn. Rep.* 223. *Paine* v. *Gill* & al. 13 *Mass. Rep.* 365.

Secondly, a judgment at law in favour of creditors would not conclude these defendants, who would be neither parties nor privies thereto.

Thirdly, in the case of *Isaacs* v. *Stevens* & al. 13 *Conn. Rep.* 499. the only breach assigned was the non-payment of the debt, and the estate being solvent, the creditors could sustain an action directly against the administrator for the recovery of the debt, to which his sureties would be privies. *Willey* v. *Paulk*, 6 *Conn. Rep.* 74.

WILLIAMS, Ch. J. Upon the motion in arrest, the first question is, whether a sufficient cause of action is disclosed. The plaintiff, in his declaration, has counted upon a bond, in the usual manner ; which, upon oyer, is set forth, and thus becomes a part of the declaration. Whether, therefore, the

*New-Haven,*
July, 1842.

Clarke
*v.*
Mix.

5th plea is sufficient or not, is of little importance in this case; for if the bond is illegal, as is there claimed, it appears on its face; and its character cannot be changed, by an allegation, such as is contained in that plea. The plea itself states no new fact, and offers no issue, but upon a matter of law arising on the face of the record, which, of course, is not traversable, and so, not properly pleaded. Still, the question is fairly on the record, is this a valid bond?

The bond is dated the 27th of *June;* and the assignment is dated, the 29th of *April.* The condition is, to make a true and perfect inventory of all the goods of the insolvent debtors, which shall come into their hands and possession. It is said, that as *I. Mix & Sons* might have acquired property since the assignment, or might have had property not assigned, this bond requires what the court had no power to require, and so is extra-judicial and void: that in fact, it requires the trustees to inventory and account for *all* the property *I. Mix & Sons* had, at the date of the bond. The bond purports to be an official bond, and counts upon the appointment of *Mix* and *Peck* as trustees of all the goods and estate of *Isaac Mix & Sons,* which were assigned for the benefit of their creditors, by a deed dated the 29th of *April,* 1837, and recorded in the office of the court of probate, and has a condition, that if the obligors shall make a true and perfect inventory of all the goods and estate of the insolvent debtors that shall come into their hands or possession, or into the hands and possession of any other person for them, &c. Taking the parts of this bond together, it is very manifest, that it is conversant only about the goods and estate assigned, by the deed referred to, as recorded in the probate office. This appears from the connexion with that deed; and is further shown from the expression of goods coming into the hands of other persons for them. Any other construction would be a forced construction, and would require us to presume, that the court taking the bond did not intend to do its duty, rather than to make the legal inference that it did intend to discharge its duty. And we can see nothing in the terms of the bond, requiring such a construction. The bond goes on, and requires the trustees to render a true account of their trusteeship. That alone is the subject-matter; and that alone is what is contemplated in the bond. Had the

*New-Haven,*
July, 1842.

Clarke
*v.*
Mix.

defendants pleaded, that they had rendered such an account; could it seriously be claimed, that, as they rendered no account for the household furniture, this would be a breach of the bond ? The meaning is certainly as clear, as was that of the parties in *Hassell* & al. v. *Long* & al. 2 *Mau. & Sel.* 363.

But were this more doubtful, as the terms of the bond are not prescribed by statute, and as the defendants were not held in custody until they executed it, as in *Billings* v. *Avery,* 7 *Conn. Rep.* 236., we do not think that the bond will be void beyond the excess. In *Newman* v. *Newman,* 4 *Mau. & Sel.* 66., it was held, that where a bond was given conditioned for the performance of several things, that, at common law, those which were good, might be separated from those which were bad. And in *Collis* v. *Gwynne,* 7 *Bing.* 423., it is said by *Gasalee,* J., there is no provision in the act that the bond should be taken in a particular form ; and Ch. J. *Tindal* says, I do not see why we are to call in aid a distinct condition, which may be illegal, to vitiate that which is clearly legal. This subject is fully and ably considered, in *The United States* v. *Brown, Gilp.* 155. to 182. ; and *Hopkinson,* J., comes to the conclusion, that if a bond be taken at common law, with the condition in part good, and part bad, a recovery may be had on the bond, for a breach of that which is good. And in statutory bonds, where there is nothing in the statute, declaring bonds altogether void, which are not conformable to the statute, the same principle is to govern. And see *Van Deusen* & al. v. *Hayward* & al., 17 *Wend.* 67. A similar principle in the case of a deed of lands, was recognized, by this court, in the recent case of *Goodman* v. *Newell,* 13 *Conn. Rep.* 75.

It is claimed, that the replication to the 2nd and 3rd pleas is bad, because it avers, that the trustees did not make an inventory of the estate of said debtors ; by which, it is said, the whole estate of the debtors must be intended, and not merely that which was assigned. An answer similar to that given first with respect to the bond, would, on this motion in arrest, be sufficient. But, on examining the pleadings, we think that this exception could not have been sustained, in any stage of the proceedings. The allegation is of an assignment, on the 29th of *April,* of all the real and personal estate

HARVARD LAW LIBRARY

New-Haven,
July, 1838.

Clarke
v.
Mix.

of the insolvents, in the state of *Connecticut*, except the household furniture of the assignors; which assignment was lodged in the court of probate, and duly recorded there, on the same day; on which day, goods so assigned, to the value of 50,000 dollars, came into the hands of said trustees, which was well known to them; and such goods ought to have been by them retained in their possession; and that, on the 27th of *June*, 1837, bonds were ordered and given; and it was further ordered, that said trustees make and deposit with said court, within two months from said 29th of *April*, 1837, a true and perfect inventory of the estate of said insolvent debtors; and that said estate be settled within one year; and the appraisers were appointed to appraise the same, and make an inventory thereof; and the goods so assigned by said insolvent debtors to said trustees, and which came into their hands, to the amount of 50,000 dollars, then remained in the hands of said trustees; all of which goods so remaining, were subject to the controul and disposition of said trustees, and they should and might have made a true and perfect inventory thereof, and the same have deposited with the court of probate, according to the condition of said bond; and it was the duty of the trustees, pursuant to law, and to said orders, to make and deposit in said court an inventory and appraisal of all said goods and estate of said insolvents, so coming into their hands and possession as aforesaid; and the same truly to administer according to law, and to appropriate the goods and estate of said insolvent debtors, so assigned to them as aforesaid, in payment and satisfaction of said claims, &c. Every allegation here, is evidently in reference to the assignment of the 29th of *April*. When an inventory of the estate is spoken of, it commonly means the estate so assigned; and when an appraisal is mentioned, it is equally apparent, that it refers to the estate assigned; and when a return is to be made to the court of probate of goods and estate, it must intend the goods and estate before mentioned.

The bond, then, having been duly executed, and being valid upon its face, is the breach of it duly alleged? The court of probate ordered, 1. that the trustees should make and return an inventory; 2. that they should give notice of the time for the appointment of commissioners; and 3. that

*New-Haven,*
July, 1842.

Clarke
*v.*
Mix.

they should settle the estate, and render their account, within one year; neither of which, it is averred, they have done. The statute directs, that such inventory shall be made within such time as the court of probate shall prescribe, not exceeding two months. It further provides, that the court of probate shall give notice of the time of the appointment of commissioners; and although there is no express provision that the court of probate shall direct as to the time when they shall settle their account, and close the business of the trust; yet, as the court is expressly authorized to call the trustees to account for the property assigned, it would seem to follow, that the court must have authority to fix the time of settling the estate, that it might be known and understood, when the account would be taken. This, and the other orders of the court of probate, having been legally given, and not complied with, we see not why a breach of the bond is not incurred, in each of these particulars; for if a neglect to obtain the necessary orders from the court of probate, is a breach of the bond, as is said in *Warren* v. *Powers,* 5 *Conn. Rep.* 383., *a fortiori,* a neglect to comply with these orders, must be a breach.

It is further objected, that there are no persons prosecuting this bond, who can be recognized as creditors; and this presents the questions in the 7th and 8th pleas, and the answers thereto, whether any persons can be entitled to the benefit of this bond, except those whose debts have been allowed by commissioners. And that, as a general rule, must be admitted. But is this necessary, when there were no commissioners, and when the want of such a board, is one of the very acts complained of, as a breach of the bond? Now if, as we have seen, it was the duty of these trustees to give notice of the time of the proposed appointment of commissioners, and they have neglected so to do, can they defend, in consequence of an act or an omission occurring from their own violation of duty? The party who claims to be aggrieved, could not, by any possibility, prove these debts before commissioners, if there were none; and if it was the duty of the trustees to take the steps to procure their appointment, then it must follow, that the creditors have omitted to prove their debts, not from any neglect of their own, but that of the defendants, the trustees. We think, then, that

*New-Haven,*
July, 1842.

Clarke
*v.*
Mix.

these defendants are precluded from setting up this defence; and it is in vain to say, that the court of probate might have displaced them, and appointed others more faithful. The objection still remains—they are complaining of an omission, which is the fruit of their own misconduct. Besides, if these persons cannot be heard here, because this court does not know they are creditors, as their debts have not been proved before commissioners, why would not the same argument be valid, before the court of probate, if they complained of these trustees? Has the court of probate any more authority, of itself, to inquire into the validity of the debts, than this court has? The authority of the court of probate is more limited; and in *Isaacs* v. *Stevens*, 13 *Conn. Rep.* 499. 505., we held, that it had no such authority. Indeed, we see not how, upon the principles assumed, any redress at all could be had. In *English* & al. v. *Smith* & al., 13 *Conn. Rep.* 221. 224., certain persons, who had never presented their claims to commissioners, appealed, on account of the appointment of those commissioners; and it was claimed, that they were not creditors, and had no right of appeal. But the court said, that if the commissioners were disqualified to act, creditors forfeited no rights, by neglecting to recognize them, and were entitled to the same privileges as the other creditors; and besides, the superior court had found, that they were creditors. That same fact is found, by the verdict of the jury, in this case; and we cannot see, why the case of *English* v. *Smith* is not in point upon that subject. If the cases differ, that difference is in favour of these creditors. In that case, the want of competent commissioners was not through the negligence of the trustees, as it is here; but from a want of knowledge, in the court, of a fact, which disqualified one of the commissioners.

It is said, however, that if the debt need not be proved before commissioners, it must be ascertained by some court: it must be a judgment debt, before the creditor can sustain a suit upon the probate bond; and *Willey* v. *Paulk*, 6 *Conn. Rep.* 74., is cited in support of that doctrine. In that case, no such question arose; and the court say, that the claim had been established in due course of law. The judgment having been admitted in evidence, the question was, whether the sureties were bound by it. But in giving the opinion of the

court, Judge *Peters* does recognize this as a principle settled
in *Massachusetts*, *New-York* and *Virginia*. But it will be
found, that, in *Massachusetts*, it is expressly provided, by the
2nd section of the act of 1786, that where a suit is instituted
at the desire of a creditor of the deceased, he must have his
debt or damage ascertained, by a judgment of court, and
must have made a demand thereof. *Payne* v. *Gill*, 13 *Mass.
Rep.* 368. And in the case cited from *Virginia*, the case
was against sureties, and the court say, that as the sureties
cannot have the means of ascertaining the debt, suit should
first be brought against the principal ; for it is a principle of
universal law, that both parties should be heard. *Braxton*
exr. v. *Winslow* & al. 1 *Wash.* 31. In this case, both prin-
cipal and surety are parties ; of course, that case is not appli-
cable. And in the case of *The People* v. *Dunlap*, 13 *Johns.
Rep.* 437., the question did not arise, the debt having gone
into judgment ; but the court held, that the non-payment of
such a debt was a breach of the bond, notwithstanding some
*English* cases. *Archbishop of Canterbury* v. *Wills*, 1 *Salk.*
316. *Archbishop of Canterbury* v. *Tappen*, 8 *B. & Cres.* 151.

Were the law, however, upon this point, as claimed by the
defendants, we do not see why the judge of probate cannot
sustain an action upon the bond, as well as a sheriff upon a
receipt of property, when it has not been delivered. The
sheriff is answerable for it, to the creditor, or to the debtor.
There being a breach of the bond, the plaintiff has a right to
recover. The amount he must recover, is not a matter to be
determined by the form of the pleadings, but by the proof.
The only question now is, is the plaintiff entitled to judgment ?
And it has long since been settled, that it need not appear in
the declaration, for whose use the bond is sued. *Clark* v.
*Russell*, 2 *Day*, 112.

It is further claimed, that the debts are not set out with
sufficient particularity to entitle the plaintiff to judgment.
But if the plaintiff is entitled to judgment, for other breaches
assigned than the non-payment of debts, there can be no
ground for arresting the verdict, because the plaintiff must
have damages for such breaches ; and upon this motion the
court are not to look to see what damages were given.

Indeed, upon the record, as presented to this court, it does
not appear what was the sum awarded in damages. In ad-

dition to this, this objection is made upon a motion in arrest, that the plaintiff has not set out the nature and character of these debts as he ought. Now, if the non-payment was the only breach alleged, and this was upon demurrer, then, according to the case of *Isaacs* v. *Stevens*, the replication would be insufficient. But where the defendants have chosen to traverse the existence of the debts, and it is found against them, it seems too late to make that question. It is the case of a title defectively set forth, rather than the case of a defective title. 2 *Tidd's Pr.* 826. However this may be, according to our practice, sanctioned by many decisions, if there be one count in a declaration good found for the plaintiff, he is entitled to judgment. We think, therefore, judgment ought not to be arrested.

There was also a motion for a new trial, embracing some of the points which are in the motion in arrest; and so far as they are similar in principle, they need not be considered here; as, for instance, the validity of the bond. But there are questions not appearing upon the record.

And first, a copy of the deed of assignment, in connexion with the bond, was offered in evidence, no notice having been given to produce the original. It was objected to, as not being the best evidence; but was admitted, by the court. On the other hand, it was contended, that this was to be considered as a will recorded in the probate office, a copy of which is always admitted in evidence. The statute of 1828 requires these assignments to be lodged in the probate office for record, but does not require any action of the judge in regard to them, except to receive them, and this not in terms; but when it makes it the duty of the assignee to leave it for record, it must certainly be the duty of the officer with whom it is to be so left, to carry into effect the object designed in leaving it. The law intended, that the public should have knowledge of these assignments, as well when the property was personal, as when it was real; and in case of deeds of land, it has been uniformly holden, in this state, that third persons may always prove their existence, by a copy from the town-clerk, and this without proving the execution of the the deed. *Talcott* v. *Goodwin*, 3 *Day*, 267. So, too, in *England*, where a deed has been enrolled, the practice has been, to give them in evidence, though Judge *Buller* seems to

think, that they ought to be acknowledged. *Smartle* d. *Newport* v. *Williams*, 1 *Salk.* 280. *Bul. N. P.* 155. The same principle that will dispense with the original in one case, will apply to the other ; and a copy of a transfer of personal property from the records of the court of probate, is surely as high evidence as a copy of the deed from the town-clerk, is of the transfer of real estate.

Again, one object in recording this instrument in the probate office, is, to enable that court to act in relation to the property conveyed. But the orders of the court would be of no validity, unless there was evidence of the assignment which formed the subject matter of them. And can it be claimed, that a judge should be obliged to prove the validity of his acts, if the assignee chose to retain the original, by accidental proof of the correctness of his copies ? This would be to place the judge in a situation where he must be careful to retain living witnesses to support his records.

It has been claimed, that it is the duty of the court to retain the original assignment on file. If this were so, we see not but it would follow, that copies of it must then be evidence for all persons who wanted to use it ; otherwise, the files must be transported, whithersoever it became necessary to use them ; a practice, which, in all other cases, is condemned. But we see no authority in the statute, for the court of probate to retain the assignment. It is the title deed of the assignee, and cannot be taken from him, without an express law, or by clear implication.

Again, the bond given by these defendants is founded upon, and recognizes, this assignment. It recites that *William Mix* and *Jesse Peck* are appointed trustees of the goods and estate of *Isaac Mix & Sons*, for the benefit of their creditors, by a deed of assignment, dated *April* 29th, 1837, and recorded in the probate records of the district of *New-Haven*. Now, if this bond had recited the deed of assignment in the words of it, it could not be doubted, that it would, as against the obligors, be sufficient evidence of the existence of such assignment, as well as of its terms. We must hold, that a deed under seal, by a party acknowledging he has received or given a conveyance, is sufficient evidence of that fact, or at least, admissible as tending to prove it,—as against the party making such acknowledgment. It is true, that in this case,

HARVARD LAW LIBRARY

the assignment is not recited ; it is only described ; and it is possible, the instrument offered, is not that which is described. But if the party has admitted the existence of such an instrument as this purports to be, and the instrument produced corresponds entirely with such admission, it would seem to furnish *prima facie* evidence that it was the instrument intended. It may, indeed, have been forged ; so may a deed which has been recorded ; but that will not prevent the copy being given in evidence. And the question here is, not as to the weight, but the admissibility, of the evidence.

It is further contended, on the part of the plaintiff, that the defendants having, by their bond, admitted the existence of this instrument, are estopped from denying it. The defendants, on the other hand, say, that if this were so, it should have been pleaded. Now, without going into the learning upon the subject of estoppels, it seems to us, that it is enough to say with Ch. J. *Holt*, can there be better evidence of a deed than for one to own it and recite it, under his hand and seal ? *Dillon* v. *Cranley*, 12 *Mod.* 500. In the opinion of the majority of the court, the copy was properly admitted.

Another objection is, that it is signed by *I. Mix*, by virtue of a power of attorney ; and there is no proof of the due execution of that power of attorney. But if we are right in the position, that the execution of the instrument may be proved, by the acknowledgement of the bond, that acknowledgement must extend to every thing necessary to prove the due execution. It recognizes it as the act of *I. Mix & Sons ;* and if it purports to be signed, by virtue of a power of attorney, it cannot be their act, unless the attorney was duly authorized. Of course, it must follow, that if it was the act of *I. Mix & Sons*, he who used their names had that authority which made it theirs.

It is further objected, that the assignment was invalid, as it referred to an instrument not then existing ; and reliance is placed upon the case of *Drakeley* & al. v. *Deforest*, & al. 3 *Conn. Rep.* 272. In that case, there was no specification or description at all of the property, but a reference to a schedule not then made; and the court held, that all depended upon the schedule. But this is an assignment of all the property of the firm in this state, excepting household furniture, a schedule of which is to be made and annexed thereto,

*New-Haven,*
*July,* 1842.
———
Clarke
*v.*
Mix.

as soon as may be. The assignment, then, is complete ; but for the greater facility in finding the goods, the schedule is to be made. In *Emerson* & al. v. *Knower*, 8 *Pick.* 63. 65., there was an assignment of a quantity of leather and stock for the manufacture of boots and shoes, and of boots and shoes already made, or partly made, in the hands of certain persons ; with a proviso that a schedule of the property should be made and annexed, as soon as might be. And the supreme court in *Massachusetts* held, that the conveyance was good ; that the annexation of a schedule was not a condition on which the validity of the assignment depended ; and that the covenant was not essential, the property, and the place where it was to be found, being mentioned. And it is said, that the words " as soon as may be," prove, that it was not considered, by the parties, as affecting the validity of the assignment. A similar decision was made in *New-York*, in the case of *Keyes* v. *Brush*, 2 *Paige*, 311. And we concur in the views taken by the court in these cases.

It is also objected to this assignment, that it is invalid, as being too general—" all the property of the company in this state." Now, supposing their property in this state was known to be principally in a manufacturing establishment in *New-Haven*, but some carriages were on the way to *Hartford* and *Norwich* for sale ; could it be said, that nothing passed by this conveyance ? Suppose the trustees immediately took possession of the establishment ; could these men say, that nothing passed ? Or, suppose the deed was of all their property in *New-Haven*, or in the new township ; would nothing pass ? Such general assignments have not been uncommon in this state. *Bates* & al. v *Coe*, 10 *Conn. Rep.* 280. *Mills* v. *Skinner* & al. 13 *Conn. Rep.* 436. 441. And we see not how the party making this assignment can object to its generality. Creditors, perhaps, might say, that such sweeping conveyances might be used to cover property, and thus be void as against them. But when the property can be identified, as the property of the assignors, we know of no principle which will admit them to say, that the solemn instrument which they have made, may be treated by them as if it did not exist. In the case of *Pearpoint* & al. v. *Graham*, 4 *Wash. C. C. Rep.* 232. 237. (if the facts are fully stated,) there was an assignment of all the estate of the debt-

or, of every kind, confirmed by a subsequent assignment of certain specified effects; and as to this first assignment, *Washington*, J., says, as to the want of a schedule, it must be admitted, that an assignment of all the debtor's effects, without a specification of property, is, generally speaking, an *indicium* of fraud; but nothing more. And if, as between the parties, a general conveyance of property was not valid, the learning which was displayed in *Twyne's* case, must have been thrown away, and the various questions there discussed were of no importance to the results.

Several objections were made to evidence tending to show the existence of debts due from *I. Mix & Sons.* They have been considered, substantially, upon the question whether it must not appear that the debts were proved before commissioners.

One question, however, was made, with respect to the debt of *Ross*, as he had taken a new note, since the assignment, upon which the jury were certainly properly instructed, that such note did not extinguish the original debt.

The defendants also objected, that as it appeared, by the deed of assignment, that it purported to be executed by *Isaac* and *Thomas Mix* of *New-Haven*, and *Isaac Mix*, jr., of *New-York*, in connexion with proof that *Isaac Mix*, jr., had always resided in *New-York*, and the bond counted upon a deed, executed by *Isaac Mix & Sons*, of *New-Haven*, the variance was fatal. We see nothing here in the nature of a variance. The question rather is, whether the persons described in the bond and the assignment are the same, or whether they are different persons. The firm might be doing business in *New-Haven*, and thus justify their being described as of *New-Haven*; or *Isaac Mix*, jr., since the assignment and execution of the bond, might have removed to *New-Haven*. We think, therefore, this objection can no more avail in this shape, than upon the pleadings.

But it is claimed, that evidence should not have been admitted to prove damages incurred upon the debts of *Ross* and others, because the nature and character of those debts are not sufficiently set out, by the plaintiff, in his replication; and it is said, that in *Isaacs* v. *Stevens*, it was decided, that the debts must be set out with the particularity that they must have been, had a suit been brought directly upon them. In that case, it was decided, that the plaintiff must, to a plea of

New-Haven,
July, 1842.

Clarke
v.
Mix.

performance, assign a breach ; and we certainly are not dis-
posed to question that doctrine.    But here, one or more dis-
tinct breaches of the bond are assigned and proved.    The
plaintiff, at common law, had a right to judgment for the
whole penalty ; and the defendant was driven into a court of
equity to reduce it.    *Collins* v. *Collins, 2 Burr.* 824.    For,
in an action of debt on a bond, the plaintiff, at common law,
could assign but one breach.    *Manser's* case, 2 *Co.* 4.    This
is varied by statute ; and if judgment is given for the plaintiff,
on demurrer, or by confession, or *nil dicit*, the plaintiff may
suggest on the roll as many breaches as he sees fit, and the
jury may pass upon them.    1 *Wms. Saund.* 58. n.    Now, if
a bare suggestion upon the roll will entitle the plaintiff to
prove any damages he has suffered, shall we be more nice,
and require more precision, when we are inquiring what in
equity is due to this plaintiff?    Are not the defendants ap-
prised of the nature of the claim, by these replications, as
fully as if they were merely suggested on the roll?    Our
statute merely provides, that where the bond is forfeited, such
damages shall be assessed, as are justly and equitably due ;
and judgment shall not be rendered for the whole penalty,
unless it appear to be due.    Now, had this judgment been by
default, or upon demurrer to the plaintiff's declaration, there
can be no doubt, by our practice, and also upon principles of
equity, that the court would inquire what damages the plain-
tiff, or those he represented, had sustained.    And can the
defendants now sustain any injury, that they would not then?
If it is said, they do not know what to defend against, it might
so be said then.    If it is said, that it is not here shown what is
the particular claim on which damages are given ; the same
might be said in that case.    And if these objections cannot
prevail in those cases, it seems that they should not in this.
In this very term, in the case of *Rowland* v. *Isaacs,* 15 *Conn.
Rep.* 115., the defendant's plea being determined against him,
we have gone on and assessed to the plaintiff the damages he
had sustained.    As the defendants have incurred the penalty
of the bond, they ought not to complain, if the plaintiff re-
covers no more than he has shown himself equitably enti-
tled to.

It is, then, the opinion of a majority of the court, that there

HARVARD LAW LIBRARY

should not be a new trial; and that the superior court should be advised to overrule the motion in arrest.

In this opinion WAITE and STORRS, Js. concurred.

CHURCH, J., dissented on two points. He held, 1. That the assignment was void, as being too general in its description of the personal property attempted to be assigned by it; and that it fell within the case of *Drakeley* v. *Deforest*, 3 *Conn. Rep.* 273.

2. That under the pleadings in this case, no evidence was admissible to prove the debts of *Ross* and *Punderford*, because such debts are not set forth with sufficient certainty in the replication;—that the case of *Isaacs* v. *Stevens*, 13 *Conn. Rep.* 499., is in point, and a controuling authority on this question.

HINMAN, J. The plaintiff in this case, for the purpose of proving the execution and delivery of the deed of assignment from *Isaac Mix & Sons*, offered in evidence, in connexion with the bond to the judge of probate, a copy of the probate records, where, as the plaintiff claimed, the deed had been lodged for record, and recorded. The defendants objected to the admission of this copy, on the ground that the original should be produced, or its non-production accounted for, by proof of its loss, or of its being in the defendants' hands; in which last case, the plaintiff should give notice to the defendants to produce it. This objection appears to me to have been well taken. The rule is believed to be universal, which requires the best evidence, and excludes all secondary, until some ground is laid for its admissibility, by showing that the better evidence cannot be had. But here the plaintiff was allowed to prove the execution and delivery of a deed, not by its production, and proof of its execution, but by a certified copy from the probate records, and without any effort, or show of effort, to produce the original. If this can be done, it would seem that a copy from the town records would, in all cases, be evidence of the execution and delivery of the deeds recorded there.

I know it has been contended, that as this deed was given, and recorded, under the act of 1828 regarding the assignments of insolvent debtors, that act justifies us in considering

the execution and delivery of it to have been judicially deter- *New-Haven*, July, 1842.
mined, by the court of probate, before it was recorded ; and
therefore, the probate record is conclusive upon the defend- Clarke *v.* Mix.
ants. And if the decision of the court below can be sustain-
ed, it would seem to me to be upon this ground alone. But
an examination of that statute has satisfied me, that no such
judicial determination has been, or could be, had, by the court
of probate ; nor was any such contemplated, by the statute.
The first section of that act contains all that bears upon the
question. It provides, that the deed " shall, as against the
creditors of the person making such conveyance or assign-
ment, be deemed and adjudged fraudulent and void, unless
the same be made in writing, for the benefit of all such credit-
ors, in proportion to their respective claims, and be lodged for
record in the office of the court of probate for the district
where the assignor, or assignors, or some of them, reside ;
and the judge or clerk of said court shall enter thereon the
time when the same was received for record ; and the record
shall bear the same date." There is nothing in this section
that countenances the idea that any judicial determination of
the court of probate could be had, establishing the execution
and delivery of the deed, before its being recorded. All that
is done, is obviously ministerial, like the recording of a town-
clerk. There is, indeed, great similarity in the two statutes,
as to the rendering of deeds in the office of the court of pro-
bate, and the office of the town-clerk. The latter statute
(*page* 390.) declares, that " all grants and deeds of bargain
and sale, and mortgages of houses and lands, shall be record-
ed at length, by the register or town-clerk, where such lands
and houses lie ; and no deed shall be accounted good and
effectual to hold such houses and lands, against any other
person or persons but the grantor or grantors, and their heirs
only, unless recorded as aforesaid ; and the register or town-
clerk shall, on the receipt of any grant or deed of houses and
lands, brought to him to record, note thereon the day, month
and year, when he received the same ; and the record shall
bear the same date." All that is to be done under either of
these statutes, prior to the recording, is, to note upon the deed
the *time*, when it was received, by the judge or clerk, under
one, and by the register or town-clerk, under the other ; and

both acts then declare, and in the same language, that thereupon "the record shall bear the same date."

The case is unlike the proof and recording of a will in the court of probate. The provision in the statute relating to wills, is entirely different; it is as follows : " It shall be the duty of the executor or executors of any last will and testament of any person deceased, to cause such will to be *proved and recorded* in the office of the court of probate." Here a judicial act is required before recording—the will *must be proved.* If the legislature had intended, that a deed should be first proved in the court of probate before recording, they would have said so, as distinctly as in the case of wills; and if they have not, I do not feel at liberty to supply an important provision, which they have seen fit to omit.

It is claimed, however, that these defendants have admitted the execution and delivery of the deed, in the bond which they have given ; and that this dispenses with the necessity of producing or proving it. But no admission, unless made with a view to the trial, can dispense with this proof. And this rule is so rigourously adhered to, that an acknowledgment, or an admission, in an answer in chancery, will not dispense with it. It is a rule applicable to every written instrument, which is attested by subscribing witnesses, when offered in evidence, either against the party making it, or a third person. 1 *Sw. Dig.* 757. *Call* v. *Dunning,* 4 *East,* 53. 1 *Phil. Ev.* 465.

And though this rule was relaxed in the case of *Hall* v. *Phelps,* 2 *Johns. Rep.* 451., in the case of the subscribing witness to a note ; yet, it is believed, that the rule established by that case, has never been extended beyond cases of negotiable paper ; and with respect to sealed instruments, the rule requiring the subscribing witnesses to be called, has been steadily adhered to. *Fox* v. *Reil,* 3 *Johns. Rep.* 477. *Henry* v. *Bishop,* 2 *Wend.* 575.

Nor are the defendants estopped, by any thing contained in the bond, from insisting on the proof demanded. For, assuming that the bond has admitted the execution and delivery of the deed in question ; still, if the plaintiff intended to rely on that as an estoppel, he should have pleaded it. But by taking issue on the fact, whether there was any deed of assignment or not, he has waived the estoppel, and must

prove his deed. 1 *Sw. Dig.* 622. *Howard* v. *Mitchell*, 14
*Mass. Rep.* 241. 1 *Stark. Ev.* 295. (ed. 1834.)

The rule is correctly given, by Judge *Swift*, in his *Digest*, p. 622., that " when the matter to which the estoppel applies, is distinctly averred, or claimed, by one party, and the other, instead of pleading the estoppel, as he may in that case, takes issue on the fact, he waives the estoppel." And this rule was recognized, by this court, in the case of *Shelton* v. *Alcox*, 11 *Conn. Rep.* 250.

Can it be said, that the plaintiff had no opportunity to reply to the defendants' plea, denying the execution and delivery of this deed, by setting out the bond by way of estoppel? In *Shelton* v. *Alcox*, the Chief Justice says: " If he (the plaintiff) had set out the award, and demanded they should be estoped by it, it is apparent it would not have answered the plea; because an award that *Alcox* had no title in *June*, 1830, is no answer to a plea that he had title at the time of the plea pleaded." He, therefore, correctly concludes : " It is not very easy to see, then, how the plaintiff, in his replication, could have had advantage of the estoppel." But if the plaintiff is right in this case, in supposing that the deed is recited in this bond, would it not be a conclusive answer, by way of estoppel, to the plea denying the execution and delivery of it ? If so, and it seems to me to be so, and if this court was right in *Shelton* v. *Alcox*, when they say, " the rule is well established, that a party neglecting to plead an estoppel, cannot take advantage of it," then it would seem to follow, that the plaintiff, having taken issue on the execution and delivery of this deed, must prove it, before he can call upon the defendants to account for the property claimed to have been assigned by it ; or if he relies on the estoppel, he must plead it.

I think, too, the objection was well taken, that, even admitting the certified copy to be proof of the execution and delivery of the original, it was further necessary to show the power, under which *Isaac Mix*, sen., of *New-Haven*, executed the instrument in the name and for *Isaac Mix*, jr., of *New-York*. That would have been necessary, had the original been produced and proved ; and surely the copy cannot take a higher place in the scale of evidence than the original itself. This objection was also overruled ; but the motion finds, in connexion with it, certain facts, which seem to have been

relied upon as evidence, to shew the authority of one of the partners to make the deed, for, and in the name of, the other; namely, that " it was admitted by the parties, that at the time of making said deed of assignment, *Isaac Mix,* sen., *Isaac Mix,* jr., and *Thomas Mix, were partners,* carrying on the business of carriage-makers, at *New-Haven,* under the name of *Isaac Mix & Sons,* and had an establishment at *New-York* for the sale of their carriages, where *Isaac Mix,* jr., had, for several years, resided, having charge of that establishment." Waiving the question, whether an assignment under the statute of 1828, is within the scope of partnership business, so that a partner here could assign for his partner in *New-York,* there is still a difficulty, which would seem to be insuperable. The deed in question is a sealed instrument. The partner here, therefore, has not attempted to execute it, as a partner. He has not signed the co-partnership name; but each partner gives his separate signature, annexes to it a separate seal, and solemnly acknowledges it as his deed. It cannot be necessary to refer to authorities, to shew, that one partner cannot bind the others, by deed. How, then, could this deed be complete and a valid instrument, without a power of attorney from *Isaac Mix* of *New-York* to *Isaac Mix* of *New-Haven,* to execute it ?

There is another question in this case, which I was at first inclined to think correctly settled, by the judge at the circuit ; as it seemed to come within the principle of our decision, at the present term, in the case of *Rowland* v. *Isaacs,* in *Fairfield* county, (15 *Conn. Rep.* 115.) But a more careful examination of that case has convinced me, that it is clearly distinguishable from this ; and if so, it would seem that the principle recognized by this court, in the case of *Isaacs* v. *Stevens,* 13 *Conn. Rep.* 499., not only required of the plaintiff a more particular and perfect allegation, in his replication, of the non-payment of the *Punderford* and *Ross* debts ; but, as the other breaches were well assigned, and the defendants could not, therefore, successfully demur, or move in arrest, the objection they interposed to the evidence offered to prove those debts, ought to have been sustained.

Until it is so decided, by this court, I cannot recognize the doctrine, that on every technical breach of a probate bond, we are to allow the jury to pass upon all the unliquidated

claims, not only of heirs, but of all persons claiming to be

creditors, or in any other way claiming an interest in the
estate. And I do not see how this result is to be avoided,
upon the principle for which the plaintiff contends.

I do not understand the plaintiff as claiming, that the non-
payment of the *Punderford* and *Ross* debts, is so alleged in
the replication, and their nature and character so set forth,
that had no other breach of the condition of the bond been
assigned, he could recover upon this alone. But he insists,
that the evidence on that point, did not come in to prove a
breach, but only as a rule of damages.

Now, it is difficult for me to see, how there can be a rule
of damages for *that* condition of a bond, which has not been
broken. The defendants have pleaded performance gener-
ally of the condition of the bond. The plaintiff replied, set-
ting out the breaches on which he intended to insist. And
an insufficient and imperfect assignment of a breach, is the
same as if none had been made, or attempted.

Suppose, then, an administrator neglects, within the two
months allowed by law, to return an inventory; such negli-
gence is by no means an uncommon occurrence; can any,
and if any, every, creditor, or person who claims to be a
creditor, sue the bond, and, without assigning the non-pay-
ment of his debt, as a breach of the condition, nevertheless
prove his debt, and recover, as a rule of damages, under the
assignment of not having made an inventory within the time?
To allow this, would seem to me to be introducing a practice,
as illy calculated to do justice between the parties, as it
would be embarrassing to heirs.

But have we sanctioned such a practice, by our decision of
the case of *Rowland* v. *Isaacs?* I think we have not. In that
case, the defendant, instead of pleading, as he might have
done, performance generally of the condition of the bond, set
up a special justification for having broken that part of it,
which required him to settle the estate, and pay over to the
heirs their shares of it, *viz.* that he had expended the whole
estate remaining after the payment of the debts and charges,
in the necessary maintenance and education of the two minor
children, who were the only heirs, and, of course, the only
persons interested in the distributive shares, to recover which
the suit was brought. This justification was traversed. By

these pleadings, then, the breach of the bond, in this particular, was confessed. The defendant could not justify, without admitting a breach. His plea was, therefore, by way of confession and avoidance. Upon this state of the pleadings, the defendant claimed, that if the jury should find against him, still the plaintiff could only recover nominal damages. There was no question whether the breach was well assigned. Indeed, there was no assignment of a breach. The defendant admitted a breach; and the jury, having negatived his attempted justification, the only question there was, or could have been, was as to the damages. And we held, and I think correctly, that the plaintiff should recover his actual damages, and not nominal damages merely. The defendant, in that case, was in no better condition than if he had been defaulted, with a rule to be heard in damages.

But no such question arises in this case. Here, the defendant admits nothing by his plea. He says generally, that he has performed the condition of his bond. This has thrown upon the plaintiff the burden of specifying the breaches on which he intends to insist; and if there are any that he has not seen fit to specify, he waives them; the general principle being, that a party who puts himself on one issue, admits all the rest. *Corsbie* v. *Oliver*, 1 *Stark. Ca.* 76.

The breaches should also be assigned with the same certainty that is requisite in a declaration. This the plaintiff has attempted to do. He has assigned several breaches; and among them, is this, that the defendants have not paid either *Punderford* or *Ross;* who, the plaintiff says, are creditors of *Isaac Mix & Sons.* But the nature and character of these debts are not given. And, in the language of this court, in *Isaacs* v. *Stevens,* upon a similar replication, where the non-payment of a debt was assigned in nearly the same language as in this case: "I do not see how this replication can be delivered from this infirmity. Nothing more is alleged in regard to these debts, than their amount."

I, therefore, come to the conclusion, that the superior court erred in admitting this testimony, as well as in the ruling upon the other points which I have examined; and upon these grounds alone, I think a new trial ought to be had.

Motion in arrest overruled;
New trial not to be granted.