Oomstock, Oh. J.
 

 The assignment is not void for the reason merely that it contains a provision directing the assignee to
 
 *24
 
 convert the property “into cash as soon as the same may conveniently and properly be done.” The rule undoubtedly is, that an insolvent debtor cannot create a trust of this nature and impose upon the trustee any restrictions inconsistent with the right of creditors to have the assigned property converted immediately into money for the payment of their demands. An assignment drawn precisely as it ought to be will not undertake to speak to the assignee in regard to his duties under the trust. Those duties, unless the creditors themselves direct otherwise, are simply to convert the estate and pay the debts in. the order and with the preferences indicated in the instrument. A trustee is always bound by any restrictions contained in the writing which creates the trust, and if these are inconsistent with the rights of creditors, the trust itself must fall to the ground. The law does not, in general, control a trustee in opposition to the will of the author of the trust as declared in the writing by which it is constituted; but the law can and does overthrow all schemes by which creditors are hindered, delayed or defrauded. In this particular case we think the direction to the assignee was harmless although it was entirely supererogatory. We consider it harmless because it has no definite meaning at all. The language may be criticised but it cannot fairly be construed as conferring any power or direction outside of the simple and plain duty of the assignee to go on at once, convert the estate and pay the debts.
 

 It was found at the trial as a conclusion of fact, that the assignor when he made the assignment supposed that his property was sufficient to pay his debts, and on this ground it is said that the law condemns the transaction. As assignments for the benefit of creditors are generally made by insolvent debtors, it is not unfrequently urged that such dispositions of property can be made only by that class of persons. But this doctrine has no foundation in principle or authority. These assignments are in their nature simply trusts for the payment of debts. The power to create such trusts is certainly not peculiar to insolvent men. On the contrary it is a power more unquestionably possessed by men who are entirely solvent. In
 
 *25
 
 England insolvent assignments fall under the condemnation of the bankrupt system. But there, as well as here, persons of undoubted ability to pay their debts can dispose of their property as they please, so far as the question of power merely is concerned. This right of disposition, on general principles of law and justice, was never doubtful except in case of a debtor’s inability to meet his engagements. In that condition the claims of creditors are in justice paramount, and the debtor’s power to dispose of his estate, even for their benefit, was not established without a struggle. In short, it was the insolvency rather than the solvency of a debtor which suggested the doubt in regard to the right of putting the whole or any part of his property in trust for the benefit of creditors. It is undoubtedly true that a solvent as well as an insolvent person may make a fraudulent assignment. In either condition, the question is one of fact, depending mainly on other circumstances, where the instrument is on its face free from obnoxious provisions.
 

 It has been urged that a debtor having, as he believes, an estate more than sufficient to pay all his debts, but neverthe less embarrassed by th'eir immediate pressure, and fearing & sacrifice, has no right to withdraw his property from legal process and delay his creditors by the interposition of a trust. This argument has the same force in the case of admitted "insolvency. In either case if the intention is to hinder or delay creditors the transaction is fraudulent, but that intention cannot be inferred from one condition of the assignor any mpre than from the other. It is admitted that an insolvent may assign the whole or any part of his estate. It is a perfectly clear proposition that a person not only solvent but unembarrassed may do the same thing. Is there then an intermediate candi tian between solvency entire and complete, and total insolvency where the right and power to create such a trust do not existí According to plain rules of logic and law, I think there is not.
 

 The authorities cited in support of the doctrine contended for do not sustain it. ’ In
 
 Ward
 
 v.
 
 Trotter
 
 (3 Mon., 1), the deed of trust declared that the" debtor made the assignment “to pre
 
 *26
 
 vent a sacrifice of his property, which he deemed ample for the payment of his debts.” One of the objects of the trust therefore, was to prevent a sacrifice, and this was illegal because the creditors, in their election, had a right to demand an immediate conversion, although at a loss to the debtor’s estate. The assignment was therefore adjudged to be void. A similar doctrine was laid down in
 
 Vernon
 
 v. Morton (8 Dana, 247, 263). These Kentucky cases were cited in
 
 Van Nest
 
 v.
 
 Yoe
 
 (1 Sand. Ch., 4). In that case the illegality did not appear on the face of the instrument, but the answer admitted that the assignment-was made with a view to have a solvent but embarrassed estate
 
 uturned to the lest
 
 account.” This was understood to be a confession that the motive of the debtor was to procure an extension of time so as to save a larger surplus to himself. Some observations of the Assistant Vice-Chancellor may go further than he was required to go by the precise facts before him. But the case itself is by no means an authority for saying that a solvent debtor may not make an honest and valid assignment.
 

 It-is claimed that the complaint in this case is so framed as to justify a decree that the assignee account for the estate which went into his hands, even assuming that the assignment is valid. This view of the case does not appear to have been urged at the trial, and there is. in the record no exception which raises such a question.
 

 We think the judgment must be affirmed.
 

 All the judges concurred; Selden, J., excepting, however, to that portion of the opinion which, as he thought, implied that it might be indifferent upon the question of actual intent to hinder and delay creditors whether the debtor was solvent or insolvent. In the former case there appeared a presumption that the motive of the assignor was to increase an anticipated surplus for himself.
 

 Judgment affirmed.