BATES vs. ABLEMAN and others.

Statements of an assignor of property for the benefit of creditors, made *after* the execution of the assignment and the delivery of the property to the assignee, tending to show that he made the assignment with intent to hinder and delay his creditors, are not admissible as evidence to impeach the title of the assignee, such statements being as to him mere hearsay.

Such statements made by the assignor at the time of the assignment, and so connected with it as to form part of the *res gestæ*, would be admissible for the purpose of showing the intent of the assignor.

There is no error in a refusal to instruct the jury that if the assignor of property for the benefit of his creditors believed himself to be solvent at the time he made the assignment, and made it with a belief that there would be a surplus, the assignment was fraudulent and void.

The intent of the assignor in making the assignment was the material question for the jury, and the fact of his belief that his property was sufficient to pay his debts and leave a surplus, was only evidence proper for them to consider in determining that question.

An assignment by a debtor, of his personal property for the benefit of his creditors, is not invalid because the debtor owned real estate which was not conveyed to the assignee.

Where an assignment for the benefit of creditors purported to assign all the personal property of the assignor, but contained a provision that a schedule of the property should be annexed as soon as it could be prepared, it was *held*, that the instrument was valid, and took effect from its delivery, whether the schedule was made or not.

APPEAL from the Circuit Court for *Sauk* County.

Seymour made an assignment of his personal property to *Bates*, in trust for his creditors, several of whom afterwards caused a portion of the property to be seized and sold under attachments against Seymour. This action was brought by *Bates* against the attaching creditors, the officer who seized the property, and the attorneys who directed the seizure, to

recover its value. The validity of the assignment was the question in controversy. The assignment was dated November 29th, 1856, and a subscribing witness to it testified that it was delivered that day to *Bates*, who immediately took possession of the goods described in it, and kept possession until the 13th of December following, when they were seized under the attachments against Seymour. It purported to assign to *Bates* all the goods and chattels of Seymour, and all debts due or to become due to him (of which goods, chattels and debts, it was stated in the assignment, a schedule, to be marked A, was *to be* annexed, as soon as it could be prepared), in trust, to dispose of and collect, and out of the net proceeds to pay in full certain debts of the assignor, designated in the schedule annexed thereto marked B, as class No. 1, amounting to $1,518 31, and after the payment thereof, to pay rateably the debts designated in said schedule as class No. 2, amounting to $8,022 14. Among the debts included in class No. 2, were the following: "N. Kennison, for money borrowed, as per note, $1,000 00. C. G. Williams, for purchase money of land, as per two notes, $600 00." The schedule referred to as marked A (which was annexed to the assignment, when introduced on the trial), described the goods mentioned in the complaint, and all the other personal property of Seymour. The goods were inventoried in it at $3,948 08, the book accounts at $3,000 00, and the notes at $1,000 00. The schedule also described two pieces of land "supposed to be worth $3,200 00." Seymour, called by the defendants as a witness, testified as follows: "I was the owner of the two lots of land described in schedule A, attached to the assignment; at the time of the assignment I held the deeds; I had paid $600 00 of the purchase money; I think the lots worth what they are inventoried at; the demand of N. Kennison for $1,000 00, and of C. G. Williams for $600 00, are secured by mortgages on those lots, and are for the balance of the purchase money; my assets amounted to considerable more than my liabilities, and I thought when I made the assignment that I had assets sufficient to pay all my debts, and I think so now, if I had sufficient time. I did

January Term, not tell Mr. Cameron that I made the assignment to gain
1861. time." As to the value of the property embraced in sched-
BATES ule A, Seymour testified that the goods were inventoried at
v. New York cost, and were worth thirty-three per cent. above
ABLEMAN et al. the New York prices, but on cross examination said, "I think I should about as lief have these goods at the price they were inventoried at, as to have gone to New York to make purchases." Another witness, who had been a clerk of Seymour, testified that the goods were worth thirty per cent. over New York cost. One of the defendants testified that the goods were appraised at $2,990 54, by merchants who were called by him as appraisers under the attachments, and that he did not think they were worth as much as they were appraised at. *Bates*, the plaintiff, testified "that he thought the property would sell for what it was put at on the schedule."

The defendants read in evidence, subject to objections, the deposition of one Cameron, which was in substance as follows: "I called on Mr. Seymour in the early part of December, 1856, and a few days after, as he said, he had made the assignment, to get him to pay or secure the claims of the creditors, who afterwards seized the goods on attachment. I told him I was surprised to hear that he had made an assignment, after what he had so recently promised in a letter to the attorney for those firms. He said he got a letter from the attorney, and supposed that unless the demands were paid, payment would be enforced. I replied that such was not the intention. He said he knew enough of New Yorkers not to trust them; they would take advantage when they could; that he could pay all his debts if he had time, but could not pay then; expected to be crowded, and therefore made the assignment, and that now those firms must wait with the rest of his creditors. I advised him to resume his business, secure my claims, and take time. He said he was through, and could do no more—the assignment was made. I asked to see the assignment, and an instrument purporting to be one was shown me by *Mr. Bates.* The schedules of property belonging to it were on separate pieces of paper, and not in form. *Mr. Bates* told me some-

thing more had to be done, that they were not fully made January Term, out, and that some additions were to be made. I looked at 1861. the papers; the columns were not added up, nor was there any final footing of the amount of the assets. I then told Mr. Seymour that I thought him foolish to make an assignment, when he could have got time to pay his debts, and that I could not see why he had done it. He told me he made the assignment to gain time and prevent a sacrifice of property. The conversation took place in Mr. Seymour's store. *Mr. Bates* was in the store at the time. One or two persons came in to trade a little, but did not remain I think *Mr. Bates* heard some of the conversation, for he was standing by a part of the time. When Mr. Seymour told me he made the assignment to gain time and prevent a sacrifice of his property, we were standing apart by ourselves in the rear part of the store, and I do not think any one was near enough to hear what was said between us." To this testimony the counsel for the plaintiff objected, upon the ground that the declarations testified to by said Cameron were made after the assignment, and after Seymour had parted with the title and possession of the property, and in the absence of the plaintiff. The counsel for the defendants contended that said declarations were admissible to show the intent of the assignor in making the assignment. The court sustained the objection and excluded the testimony as to said declarations. The counsel for the defendants insisted that in all cases of general assignment, the assignor was bound to devote all his property, real and personal, to the payment of his debts; and that, inasmuch as it appeared by the schedule annexed to the assignment, that the assignor was the owner of certain real estate which was not included in the assignment, the assignment was therefore fraudulent and void in law, on the face of it, as to the creditors of the assignor, and asked the court so to instruct the jury. The defendants also asked the court to charge the jury, " that if they believed from the testimony that Seymour believed himself to be solvent and able to pay all his debts, at the time he made the assignment, and made the assignment under the expectation and belief that there would

BATES<br>v.<br>ABLEMAN et al.

be a surplus, then the assignment was fraudulent and void as to his creditors;" but the court refused to give that instruction, and the defendants excepted. The court instructed the jury, "that whether the assignor is solvent or not, and even if he has a surplus, he may nevertheless make an assignment, and the assignment be upheld, if it be made in good faith for the payment of his debts, and without intent to hinder and delay his creditors;" and also, "that although Seymour, at the time he made the assignment, was the owner of real estate, as it appears he was by the schedule annexed to the assignment, and although the same was not assigned and did not pass to the assignee, as it is not pretended it did, by virtue thereof, the assignment is not fraudulent and void as to the creditors of said Seymour on that account; that a person may assign a portion of his property and the assignment be upheld, unless the jury shall believe from the testimony that the assignment was made with intent either to hinder, delay or defraud creditors, which intent was a question of fact for the jury." The court also charged the jury, "that if they believed, from the evidence, that Seymour made the assignment in good faith, and not with an intent to hinder, delay or defraud creditors, then it was valid; but that if, on the other hand, it was not so made, but was intended to hinder, delay and defraud his creditors, then it was void, and the defendants entitled to a verdict."

Verdict for the plaintiff, against several of the defendants, and judgment accordingly.

*G. A. & J. C. Starkweather*, for appellants, argued that the assignment was void by reason of fraud on its face, it appearing therefrom that the assignor was the owner of real estate of the value of $3,200, not included in the assignment; that the assets amounted to some $1,600 more than the debts; and that the payment of notes given for the purchase money of the real estate and secured by mortgage, was charged upon the proceeds of the personal property. Where preferences are given, the whole of the debtor's property must be devoted to the payment of his debts. Burrill on Assignments, p. 82. The court should have declared the assignment fraudulent as a matter of law. 3 Paige, 564;

*In the left margin:* January Term, 1861. BATES v. ABLEMAN et al.

*Sheldon vs. Dodge*, 4 Denio, 218 ; *Goodrich vs. Downs*, 6 Hill, <span style="float:right">January Term, 1861.</span>
438 ; 1 Wis., 286, 311.   2. The court erred in excluding the
testimony of Cameron.   *Bates* being a mere trustee, not a    BATES
purchaser, it was not necessary to connect him with the    v.
ABLEMAN et al.
fraudulent intent of the assignor, in order to defeat the as-
signment.   The rights of the assignor continued on, and are
represented by the assignee.   It is competent, where the as-
signor is a witness, to enquire of him whether he made the
assignment to delay his creditors or *to gain time.*   *Seymour
vs. Wilson*, 4 Kernan, 567.   The motive of the assignor is
part of the *res gestœ.*   The assignee was present at a part of
the conversation testified to by Cameron, and heard it.   The
parties were engaged in making out the schedules; they
were not complete.   *Bates* told the witness "something more
had to be done." *Crary vs. Sprague*, 12 Wend., 41; *Jackson
vs. Timmerman*, id., 299; 11 id., 83; Starkie on Ev. 466–8.
3. Where a debtor who is, and believes himself to be, able
to pay all his debts and have a surplus, makes an assign-
ment in trust for his creditors, it must be regarded as fraud-
ulent.   *Nicholsons vs. Leavitt*, 2 Selden, 510; *Kellogg vs.
Slawson*, 15 Barb. (S. C.), 56; *Van West vs. Yoe*, 1 Sandf.
Ch. R., 4.

   *Mackey & Tripp*, for respondents:

   The declarations of Seymour were not admissible.   *Sprague
vs. Kneeland*, 12 Wend., 161; *Ogden vs. Peters*, 15 Barb., 560.
It is not indispensable to the validity of an assignment for
the benefit of creditors, that it should convey the entire
property of the assignor, the unassigned residue being left
open to the claims of creditors.   Burr. on Assignments,
4–6; 446, note 3; id. 105; *Hall vs. Denison*, 17 Vt., 310;
*Wilson vs. Forsyth*, 24 Barb., 105.   Nor did its validity de-
pend upon the belief of the assignor as to whether he was
solvent or would have a surplus.   Bur. on Ass., 40–42; *Og-
den vs. Peters, supra.*   If an assignor is solvent and has a
surplus, the assignment may be upheld, if made in good
faith and without intent to hinder and delay creditors.   Burr.
on Ass., 37, 42, n. 3, and 406–9; *Sexton vs. Wheaton*, 8 Wheat.,
229–242.   It would have been error, in the submission of
the case to the jury, to have made the validity of the assign-

January Term,
1861.

BATES
v.
ABLEMAN et al.

1860,
November 19.

ment to depend, as a matter of fact, upon any other question than that of fraudulent intent. R. S., chapter 108, sec. 4; Burr. on Ass., 422, 433; *Wilson vs. Forsyth, supra.*

*By the Court*, PAINE, J. The first question presented by the exceptions is, whether the testimony of Cameron, as to the statements made by Seymour after the assignment, as to his intention in making it, should have been admitted. We think it was properly excluded. The statements of Seymour were not those of a party to the suit, and were not admissible on that ground. They were not admissions by a vendor with respect to his title, made before he had parted with it. They were no part of the *res gestœ.* We can therefore see no principle of evidence upon which they could be admitted. It is undoubtedly true, that where the intent of a party to a sale is in issue, his statements at the time and so connected with the transaction as to be a part of the *res gestœ*, are competent evidence to show such intent, even though the person is not a party to the suit. But where they are not so connected with the transaction, but are offered as mere admissions by him after it occurred, he not being a party to the suit, they are no more competent for that purpose than they would be to prove any other material fact. They are then mere hearsay. And although a person may be presumed to know very well what his intention was, yet that fact does not make his mere statements, not under oath, proper evidence to prove it, any more than any other material fact, equally well known to a witness, could be proved in the same way.

The next exception was to the refusal of the court below to instruct the jury, that if they found "that Asa N. Seymour, the assignor, believed himself to be solvent and able to pay all his debts, at the time he made the assignment, and made it under the expectation and belief that there would be a surplus, then and in that case the assignment was fraudulent and void, as to the creditors of the assignor." Now it may well be said that the fact in question might be very strong evidence from which the jury could infer an intent to hinder and delay creditors by making an assignment.

January Term, 1861.

BATES
v.
ABLEMAN et al.

The reasoning of the vice chancellor in *Van Nest vs. Yoe*, 1 Sandf. Ch. R., 4, showing that such would be its effect, is certainly very forcible. Yet it goes only to its effect as evidence. And it is obvious that even this effect might be strong or weak, according to the conclusion which it tended to produce in connection with all the other evidence, as to whether the assignee acted with reference to saving the surplus for himself, or for the benefit of all his creditors, by causing the property to be fairly applied for all, instead of being sacrificed by the rapacity of a few. It is conceived that the latter intention is not inconsistent with the belief that his property would pay all his debts, or even leave a trifling surplus. And such a mere belief is therefore by no means conclusive evidence of the fraudulent intent which is to avoid the assignment. *Ogden vs. Peters*, 15 Barb., 562. The instruction as drawn is not inconsistent with the fact, that the assignor might have believed that a surplus of only the most trifling character would have remained, and that without an assignment, his property would be so sacrificed that large portion of his debts would have remained unpaid. And yet, such a belief would furnish very slight, if any, evidence of a fraudulent intent.

But the answer to the exception is, that the instruction, as asked, submitted to the jury only the question of the assignor's belief as to his solvency, and from this, if found, derived absolutely the conclusion that the assignment was invalid, without submitting to them at all the question of intent. The latter was the material question for the jury, and the assignor's belief was only evidence proper for them to consider in determining it. Although the defendants, therefore, might have been entitled to a proper instruction, submitting such belief as evidence from which the fraudulent intent might be inferred, they were not entitled to the one asked, but it was properly refused.

The only remaining question is, whether the fact that the assignor had real estate not conveyed to the assignee, rendered the assignment void. We are satisfied that it did not. The answer to this objection is, that if the property is not conveyed, it is left as it was before, liable to seizure by the

creditors. They are therefore not injured by its being reserved. Burrill on Assignment, pp. 4, 87, 88, chapter 10. *Carpenter vs. Underwood*, 19 N. Y., 520.

On the whole, we see no error, and the judgment is affirmed, with costs.

1861,
May 15.

*By the Court*, PAINE, J. A motion for rehearing was made and argued in the case, and the counsel for the appellant, while not disposed to question the correctness of the decision already made, as to the admissions of a vendor made after he had parted with his interest, yet claim that here, the admissions which they proposed to prove by the deposition of Cameron, were made before the assignment was complete, as schedule "A" was not then annexed to it. But we think this schedule was not essential to the validity and effect of the assignment. The instrument itself granted all the property of the assignor, and then provided that a schedule should be made and annexed more particularly describing it. The authorities are, that such an instrument is valid and takes effect from its delivery, whether such schedule is made or not. *Ely et al. vs. Hair et al.*, 16 B. Mon., 239; *Clarke vs. Mix*, 15 Conn., 177; *Woodward vs. Marshall*, 22 Pick., 473; *Keyes vs. Brush*, 2 Paige, 311. The assignment, therefore, being valid without the schedule "A," and it having been delivered, and the assignee being in possession before the admissions offered in evidence were made, we think they come fully within the principle of those cases which exclude the admissions of a vendor made after he has parted with his interest, to prejudice the title of the vendee. 2 Chand., 160.

We assume that schedule B, specifying the debts to be paid, and the order of payment, was made and annexed to the assignment when executed. The instrument itself so speaks of it, and the testimony of Cameron relates only to the "schedules of the property," which, he says, were "not in form," and to which Bates, the assignee, told him "some additions were yet to be made." The arguments of the appellant's counsel, founded upon the supposed power still existing in the assignee at the time of his admissions, to desig-

nate the order of paying the debts, is therefore not sustained <span>January Term, 1861.</span> by the facts. This is all we deem it necessary to add to the opinion already filed, with the exception that we may refer <span>ROCKWELL v.</span> to the case of *Ogden vs. Peters et al.*, 21 N. Y., 23, upon the <span>ELKHORN BANK</span> point that the assignor's belief of his solvency does not invalidate the assignment.

The motion for a rehearing is overruled, with costs.

DIXON, C. J., having presided at the trial of this case in the circuit court, took no part in this decision.