Dimon *v.* Delmonico.

————————•◦◦————————

DIMON, Receiver, &c. *vs.* DELMONICO and others.

Where it does not appear on the face of an assignment made by an insolvent debtor, for the benefit of his creditors, that the assignor had a wife, at the date of the assignment, a direction in the assignment, to pay one of the preferred creditors the amount of a mortgage held by him upon the assigned property, as part of his preferred debt, should be considered as made subject to the equity, as between the creditors, to have the mortgage debt paid out of the mortgaged property.

Placing the mortgagee among the preferred creditors, as to his bond and mortgage, should not be considered as an absolute direction that the mortgage debt shall be paid out of other assigned property, but as a direction to pay the bond and mortgage out of the whole of the assigned property, including the equity of redemption in the mortgaged premises, subject to the control of the court over the assignees as *trustees,* and subject to the usual and well recognized rules of equity in the application of the assigned property to the payment of the debts, as between the creditors.

Where the proof substantially negatives the idea that the assignment was made or accepted with the particular intent to have the mortgage paid out of property other than the mortgaged property, so as to exonerate the inchoate right of dower of the mortgagor's wife, and the acts of the assignees, under the assignment, are inconsistent with such intention, and are

Dimon *v.* Delmonico.

conformable to the equity of the creditors, as between themselves, the assignment will not be held to have been made or accepted with the fraudulent intention of protecting the inchoate right of dower of the assignor's wife, in the mortgaged premises.

If the mortgagee chooses, voluntarily, and without valuable consideration, to release the wife's inchoate right of dower from the operation of his mortgage, the creditors of the assignor have no right to complain.

The fact that a portion of the debt due to one of the creditors preferred in an assignment consisted of percentages on the profits of the assignor's business, extending back through a period of many years, and placed to his credit on the books of the assignor, at the end of each year, is no indication of fraud.

Such an arrangement, in respect to the mode of paying a clerk, for his services, will not make him a partner of his employer, *it seems.*

THIS action was brought by the plaintiff, as receiver, appointed in proceedings supplementary to execution, in various suits against Lorenzo Delmonico, for the purpose of setting aside an assignment made by Delmonico in trust for the benefit of creditors. The action was brought against Delmonico and the assignees, Guedin and Babad. The complaint alleged that schedule A, annexed to the assignment, contained the names of preferred creditors, and the amounts alleged to be due to them, respectively, including among the same the name of Peter A. Delmonico, who held a mortgage upon a portion of the assigned property, executed by the assignor and his wife, for the purchase money. This debt was thus described in the schedule: "P. Antoine Delmonico, including amount due on mortgage of Beaver and South William street property, $85,763.30." The complaint further alleged that at the time of making and delivering the said assignment, the whole principal sum secured by the said mortgage, with large arrears of interest thereon, was due and unpaid, and the mortgaged premises were then worth about two thousand dollars, and not more, and at that time L. Delmonico owned the mortgaged premises in fee, and his said wife had an inchoate right of dower therein, subject to the said mortgage. That the wife of L. Delmonico did not join in the assignment, and had not otherwise released her

right of dower in the mortgaged premises. And the plaintiff charged that the assignment was made with intent to hinder, delay and defraud the creditors of the assignor; and that the same was also made with the fraudulent intent, by paying off said mortgage out of the interest of L. Delmonico in said real estate, and out of his other property, to give his wife a right of dower in said real estate, free of incumbrance. The plaintiff therefore prayed that the deed of assignment might be adjudged to be fraudulent and void, and that the assignees might be decreed to account to the plaintiff for the assigned property and the proceeds thereof.

The defendants put in an answer denying the allegations of fraud and fraudulent intent, contained in the complaint, and insisting upon the validity of the assignment, and averring that the same was executed and delivered by the assignor, and accepted by the assignees, in good faith.

*C. H. Smith,* for the plaintiff. I. The assignment is fraudulent, because it deprives the creditors of their right of substitution to the mortgage, or of having the mortgaged premises first applied to the payment of the mortgage; the effect and intent being to let in the dower right of his wife to the whole premises unincumbered, and to their prejudice. (1.) The mortgaged premises are, as between the creditors, the primary fund for paying the mortgage. (*Story's Eq.* §§ 635 *to* 645. 1 *R. S.* 740, §§ 1 *to* 6; 749, § 4. *Bigelow* v. *Bush,* 6 *Paige,* 343. *Heyer* v. *Pruyn,* 7 *id.* 465; *Id.* 627. *Halsey* v. *Reed,* 9 *id.* 446. *Willard on Exrs.* 287. *Taylor* v. *Wendel,* 4 *Bradf.* 324. *Evertson* v. *Booth,* 19 *John. R.* 486. *Dorr* v. *Shaw,* 4 *John. Ch.* 17. *Hawley* v. *Mancius,* 7 *id.* 174, 184. (2.) The effect of the provision in question is to discharge the mortgage and let in the dower. (*Ex parte Coster,* 2 *John. Ch.* 503. *Sanford* v. *McLean,* 3 *Paige,* 121. *Garwood* v. *Eldridge's Admrs.,* 1 *Green's Ch.* 151. *Coates* v. *Cheever,* 1 *Cowen,* 460. *Denton* v. *Nanny,* 8 *Barb.* 618. *Vartie* v. *Underwood,* 18 *id.* 561. *Jackson*

v. *Edwards,* 7 *Paige,* 386, 408.) The trust is *express to pay off the mortgage, not to take an assignment of it, or pay a deficiency.* (3.) To the extent of her dower it was the wife's property, and the case is not different from what it would be if the provision were to pay a bond and mortgage he had given on property he had conveyed subject to the mortgage; or if it was her debt secured by his bond and mortgage on her land. It is fraudulent. (1 *Sandf. Ch.* 348. *Wilson* v. *Robertson,* 21 *N. Y. Rep.* 587. *Planck* v. *Schermerhorn,* 3 *Barb. Ch.* 644. *Nichols* v. *McEwen,* 17 *N. Y. Rep.* 22. *Nicholson* v. *Leavitt,* 2 *Selden,* 510. 4 *Sandf.* 298.) 1. That it is a bond debt, makes no difference. The complaint is not that he had no right to pay the debt, but that he had no right to deprive creditors of their right of substitution. Had it provided for a deficiency only, which is all the right the mortgagee had, it would have been good. 2. All creditors having collaterals may sue and levy on other property of the debtor, but at the instance of other creditors who can only reach one fund, will be compelled to resort first to their security, or on being paid, to assign it. 3. The fact that the husband might have paid this debt before making the assignment, (which is disputed, because the court could compel a sale free of dower, had such a fraud been perpetrated,) is answered by the fact, that he may do many things which would be fraudulent if put in an assignment: paying individual debts with partnership money, obtaining life insurance, &c., for example. (*Grover* v. *Wakeman,* 11 *Wend.* 201.)

II. The only issue in this case is whether the assignment is fraudulent; not whether, if so, it is capable of confirmation by matters ex post facto. The evidence for the defense, therefore, is only to be considered in its bearing on the former question. If it was given to bear on the latter, it should have been pleaded as a defense. (1.) It is of subsequent acts of the assignees and mortgagee only. Neither L. Delmonico nor his wife were bound by or assented to those acts.

The intent or act of the assignee cannot affect the instrument. (*Griffin* v. *Marquardt,* 16 *N. Y. Rep.* 28. *Rathbun* v. *Platner,* 18 *Barb.* 272.) (2.) The instrument speaks for itself, and the intent of the parties cannot be proved aliunde. Even if it was a mistake, it would make no difference. (*Barney* v. *Griffin,* 2 *Coms.* 366, 7. *Goodrich* v. *Downs,* 6 *Hill,* 440. *Sizer* v. *Miller,* 1 *id.* 233. *Hanford* v. *Artcher, Id.* 351; *S. C.,* 4 *id.* 297. *Mackie* v. *Cairns,* 5 *Cowen,* 573; *S. C., Hopkins,* 393; 2 *Barb. S. C. R.* 9; 10 *Paige,* 230.) (3.) The intent of the counsel who drew the assignment is not proved. The intent is admitted by the answer, and is evaded by the assignor in giving his testimony. (4.) The very result intended has been accomplished. The wife's dower in the entire property now stands free of the mortgage, by operation of the sale, the bond of Constant, and the release. Had it been sold subject to dower only in the equity of redemption, and reserving to the purchaser the right, on paying the mortgage, to an assignment of it, it would have brought much more. Probably the mortgagee does not suppose he has released the dower, but such is the result. (5.) No subsequent acts can have the effect to cure an assignment which is void in its inception. (*Porter* v. *Williams,* 9 *N. Y. Rep.* 142, *and cases supra. Briggs* v. *Davis,* 20 *id.* 25.)

III. The assignment is fraudulent in fact. (1.) There was not an *actual and continued* change of possession. The sale, Lorenzo continuing as clerk, does not make it so. (*Hanford* v. *Artcher,* 4 *Hill,* 297. *Camp* v. *Camp,* 2 *id.* 629.) There is no evidence of good faith. (2.) Constant's debt of $26,500 was arrears of salary of $1000, for four or five years, and before that less, and the balance was for his share of the profits. These profits were merely credited to him on the books. They were *presents,* not made in pursuance of a previous stipulation, but voluntarily. Therefore there was *no debt.* A mere bonus, credited on a man's books from motives of generosity, does not create a debt. If there was a debt it must have been in pursuance of a previous agree-

ment, and if so he was a partner. (3.) The evidence shows plainly that the provision for Constant was fraudulent, made to be used in the purchase of the property for the benefit of the assignor.

IV. The assignees should be adjudged to account for the entire estate, without deduction for any payments. (*Laws of* 1858, *p.* 506.)

*Jer. Larocque,* for the defendants. I. The securing, by the assignment, to Pierre A. Delmonico of the payment of the debt due to him, including the amount due on the mortgage of the Beaver and South William street property, affords no indication of any fraudulent intent, because no direction was given to the assignees for the payment of the mortgage debt, which in any way interfered with their right to insist that the mortgaged premises should be first applied for that purpose. (*Kellogg* v. *Slauson,* 1 *Kern.* 302, *and cases cited. Ogden* v. *Peters,* 21 *N. Y. Rep.* 23. *Jessup* v. *Hulse, Id.* 168.) (1.) The mortgagee, having two securities for the payment of his debt, to wit, the mortgage, and the provision in his favor in the assignment, while the other creditors have only the latter fund to look to, a court of equity would compel the mortgagee first to exhaust his remedy under the mortgage. 1 *Story's Eq. Jur.* §§ 633, 644.) (2.) The duty of the assignees, therefore, under the assignment, was a plain one to insist on behalf of the other creditors upon the same thing. (*Kellogg* v. *Slauson,* 1 *Kern.* 302.) (3.) This duty they faithfully performed by selling the mortgaged premises subject to the mortgage, resulting as it did in the mortgagee releasing the residue of the assigned property, and agreeing to look solely to his lien under the mortgage and personal recourse against the mortgagor, for the satisfaction of the mortgage debt.

II. The only pretense for attributing a fraudulent intent to the assignor, in providing for the payment of the mortgage

debt in the assignment, is the alleged design to have the mortgage paid out of the personal property assigned, so as to let in the wife of the assignor to her inchoate right of dower in the mortgaged premises, free from the mortgage.

III. But even if evidence of such an intent could be drawn from the provision in the assignment, and the additional fact that the assignor was married when he made the assignment, no evidence of any such intent can be found on the face of the assignment, which nowhere shows that the assignor ever was married. The question therefore is not one of law, arising upon the face of the instrument, but of fact, to be made out by evidence dehors the assignment. This distinguishes the case from *Barney* v. *Griffin,* and other cases cited.

IV. It is, therefore, entirely competent for the defendants, by evidence on their part, to disprove the existence of any fraudulent intent in fact; and this they have done, both by their positive oaths of the non-existence of such an intent and by showing that all their acts were wholly inconsistent with the existence of the fraudulent design attributed to them, and that they realized for the real estate $4000 more than the highest value attributed to it by the complaint. (*Seymour* v. *Wilson,* 4 *Kern.* 567. *Griffin* v. *Marquardt,* 21 *N. Y. Rep.* 121.)

V. The plaintiff having given no evidence to disprove an immediate delivery and actual and continued change of possession of the assigned property, from the instant of the execution of the assignment until the sale made by the assignees, the defendants were under no necessity of proving those facts, or giving other evidence of bona fides. The onus of proving fraud was upon the plaintiff when he commenced his suit, and has never been shifted.

VI. The fact that a portion of the debt due to Constant Delmonico, secured by the assignment, consisted of percentages on the profits, extending back through a period of many years, placed to his credit at the end of each year, is no indication of fraud. (1.) They were the ordinary means

Dimon *v.* Delmonico.

adopted by an employer to stimulate the exertions of his clerk. They did not give to Constant Delmonico an interest in the profits as such, or a lien upon the partnership property, or constitute him a partner. (*Champion* v. *Bostwick*, 18 *Wend.* 175, *and cases cited.*) (2.) There is no evidence that the assignor was not perfectly solvent when they were placed to the credit of Constant Delmonico on the books, and they were in fact a debt of a most sacred character; but even if to be regarded as a gift, having remained for years subject to the draft of Constant Delmonico at any time, they were in the hands of the assignor really as his banker, and he had a perfect cause of action for their recovery. (*Grangiac* v. *Arden*, 10 *John.* 293. *Gardner* v. *Gardner*, 22 *Wend.* 526; 7 *Paige*, 112, *S. C. Grover* v. *Grover*, 24 *Pick.* 261. *Smith* v. *Smith*, 7 *C. & P.* 401. *Irons* v. *Smallpiece*, 2 *Barn. & Ald.* 551.)

SUTHERLAND, J. If it appeared on the face of the assignment in this case, that the insolvent assignor intended, by his assignment, or by his direction in it to the assignees, to pay P. A. Delmonico the mortgage of $79,000, to restore to his wife her inchoate right of dower in the mortgaged premises, discharged of the mortgage, it would be difficult, I think, to find a principle upon which it could be held, that the assignment for that reason was fraudulent and void as to creditors.

No doubt, as between the creditors, the mortgaged property was the primary fund or property for paying the mortgage debt; but as between the creditors, other than the mortgage creditor, and the wife, I do not see why the equity of the wife to have her right of dower restored to her free of the mortgage, by the application of other funds or property of the husband, is not as strong, and entitled to as much favor, as the equity of the creditors to have the mortgaged property appropriated to the payment of their debts, free and

clear of her right of dower, to the extent of the mortgage and the rights of the mortgagee under it.

Although insolvent, if the assignor, previous to the assignment, had paid the mortgage, such payment would have restored his wife's right of dower in the whole estate or interest, free and clear of the mortgage, and made it good and valid to its restored extent, as against judgment creditors subsequent to the marriage, or to the original vesting of her inchoate right of dower.

Why could not the assignor lawfully authorize his assignees to do that which he could lawfully do himself?

But it is not necessary to decide that question, in this case, for it does not appear on the face of the assignment that the assignor had a wife when he made the assignment; and I think the direction by the assignment to pay P. A. Delmonico, one of the preferred creditors, the amount of the seventy-nine thousand dollar mortgage, as part of his preferred debt of $85,763.30, should be considered as made subject to the equity, as between the creditors, to have the mortgage debt paid out of the mortgage property.

Placing P. A. Delmonico among the preferred creditors, as to his bond and mortgage, should not be considered as an absolute direction that the mortgage debt should be paid out of other assigned property, but as a direction to pay the bond and mortgage out of the whole of the assigned property, including the equity of redemption in the mortgaged premises, subject to the control of the court over the assignees as *trustees*, and subject to the usual and well recognized rules of equity in the application of the assigned property to the payment of the debts, as between the creditors. (*Kellogg* v. *Slauson*, 1 *Kern.* 302. *Ogden* v. *Peters*, 21 *N. Y. Rep.* 23. *Jessup* v. *Hulse, Id.* 168.)

The remaining question then is, whether in fact the assignment was made or accepted with a fraudulent intention.

Intention is generally shown by acts. The testimony of the assignor and of the assignees, not only substantially neg-

Dimon *v.* Delmonico.

atives the idea that the assignment was made or accepted with the particular intent to have the mortgage paid out of property other than the mortgaged property; but the acts of the assignees under the assignment were inconsistent with such intention, and were conformable to the equity of the creditors, as between themselves.

As to the assignees and the creditors, the mortgage was in fact paid by a sale of the mortgaged property. The mortgaged property was sold at public auction, subject to the mortgage and the dower right of Mrs. D. to Constant, the brother of the assignor. The sale appears to have been fair, and the price paid, the full value. No particulars were declared at the sale, as to ages, &c. from which the bidders could estimate the value of Mrs. D.'s right of dower; but from aught that appears, the bidders, and every person at the sale, were sufficiently informed as to these circumstances. It does not appear that any information in regard thereto was asked for, or withheld, or concealed. From aught that appears, the sale was open and fair. Neither the assignor nor his assignees, nor judgment creditors subsequent to the marriage, or the vesting of her dower right, could, by any act of his, or of theirs, deprive Mrs. D. of her right of dower. The mortgaged property was therefore necessarily sold subject to her right of dower. This right of dower was an inchoate right, or interest, in the whole estate or interest of the assignor in the mortgaged property, except as against the mortgagee, and those claiming through or under the mortgage, in the execution of which she had joined with her husband. The judgment creditors could not deprive her of her right to redeem, and thus restore to herself her right of dower in the mortgaged property, free and clear of the mortgage.

What cause of complaint, then, have the judgment creditors, on account of the arrangement which took place between Constant Delmonico, the purchaser, P. A. Delmonico, the mortgagee, and the assignees? Peter A. Delmonico agreed to look exclusively to the mortgage, and the bond of the

assignor, and the collateral bond of the purchaser, Constant, for the payment of the mortgage debt, and to exonerate, and he did exonerate, the assigned estate from the payment of the same. By this arrangement the mortgaged property was in fact appropriated to pay, and did pay, as to the judgment creditors, and the assignees, the mortgage debt, and the remainder of the assignor's estate, including the assignor's equity of redemption in the mortgaged property, was appropriated to the payment of his other debts under the assignment. Do the judgment creditors complain that by this arrangement Peter A. Delmonico was prevented from foreclosing his mortgage at once, and thus depriving Mrs. D. of her right of redemption? How could a foreclosure have benefited the judgment creditors? It would be paying them a poor compliment to suppose that a forced foreclosure would have given them pleasure, not to say, profit.

I do not see that the effect of the arrangement has been to restore to Mrs. D. her right of dower in the premises discharged of the mortgage. But if this is so, what have the judgment creditors to do with that? If the mortgagee chose voluntarily, and without valuable consideration, to release Mrs. D.'s dower right from his mortgage, what have the creditors to do with that?

If there was not in fact an actual and continued change of the possession of the assigned property, it was for the plaintiff to show it. I think the evidence does not show it, nor any bad faith on the part of the assignor or assignees.

There is nothing in the case, in my opinion, to impeach the honesty and fairness of Constant's debt of $26,500. The percentages on the profits allowed him were, I think, allowed him by way of additional salary, and were allowed in that form, to stimulate his exertions, and not with the intention of making him a partner; and such arrangement, as to the mode of paying him for his services, did not, I think, make him a partner. (*See Champion* v. *Bostwick*, 18 *Wend.* 175, *and cases cited.*)

If Constant chose to let these allowances rest in the form or condition of credits on the books of the assignor, without exacting any other evidence or security, that was a matter between the brothers, and merely shows Constant's confidence in his brother. There is no evidence that the assignor was not perfectly solvent when these credits were given.

There must be judgment for the defendants, dismissing the complaint, with costs.

[NEW YORK SPECIAL TERM, December 9, 1861. *Sutherland*, Justice.]