FARWELL *et al. v.* MAXWELL, (GRAFF, Intervenor.)

*(Circuit Court, S. D. Iowa.* April 21, 1888.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—PREFERENCES.

Under Code Iowa, § 2115, providing that no general assignment of property for the benefit of creditors shall be valid unless it be made for the benefit of all the creditors, etc., a general assignment for the benefit of all creditors will not be held invalid because the debtor executed a mortgage to one of the creditors a few hours before he made the assignment, unless it appear that at the time he executed the former he had formed the intention of making the general assignment.

2. SAME.

Under Code Iowa, § 2115, providing that no general assignment of property for the benefit of creditors shall be valid unless it be made for the benefit of all the creditors, etc., a general assignment for the benefit of all creditors will not be held invalid for the reason that the debtor on the day of making the assignment delivered to his wife certain notes due him, it appearing that such notes were, by previous agreement, to operate as security for sums borrowed by the debtor of his wife.

3. SAME—FRAUD—DELAYING CREDITORS.

Where a debtor made a general assignment of his property for the benefit of all his creditors, with the intent that the property be sold to the best advantage for the payment of his debts, yet believing that after such payment there would be a large surplus left for himself, there being no evidence of an intent on his part to secure delay in the sale, or a compromise with his creditors, such assignment will not be held void as in fraud of creditors.

4. SAME—INCLUDING CHILDREN AS CREDITORS.

The fact that a debtor included in the list of creditors in making a general assignment of his property for their benefit, the names of his sons and daughter, who, according to the evidence, had helped him in his business with a general understanding that they should be remunerated, does not of itself invalidate such assignment as fraudulent, even though it may prove that such children have no legal claim.

At Law. Intervening petition.

*W. W. Morseman* and *Wright, Baldwin & Haldane,* for plaintiff.

*W. P. Hepburn,* for intervenor.

SHIRAS, J. On the 21st of April, 1887, Adam Maxwell, a merchant carrying on business at Clarinda, Iowa, executed a deed of assignment for the benefit of his creditors ·to Valentine Graff. The plaintiffs, to whom Maxwell was indebted for goods sold on credit, brought suit to recover the amount due, and, having judgment therefor, they now seek to

subject the proceeds of the assigned property to the payment of their judgment, on the ground that the assignment is void as against creditors. The first objection made to the assignment is that a preference was in fact given to Valentine Graff by the execution of a chattel mortgage on the stock of goods on the same day that the deed of assignment was executed. The statute of Iowa requires as a condition to the validity of a general assignment that it shall be made for the benefit of all creditors, preferences being expressly forbidden. Under the statute it has been held by the supreme court of Iowa, that if an insolvent debtor, with the intention of disposing of all his property for the benefit of his creditors, mortgages his property, or a part thereof, to one creditor, and also executes an assignment,—the conveyances being parts of one general disposition of his property,—in such case the assignment will be held void, because in effect the giving of the mortgage is the giving of a preference in connection with the assignment. The fact that the debtor executes a mortgage to one creditor, and immediately after makes a general assignment, does not necessarily invalidate the latter. It must appear that the debtor, at the time of the giving of the mortgage, has the intention of disposing of his property for the benefit of his creditors, and with that intention gives the mortgage to secure one or more of his creditors, completing the transfer of his property by the execution of the deed of assignment. *Van Patten* v. *Burr*, 52 Iowa, 518, 3 N. W. Rep. 524. From the evidence in this case it appears that Valentine Graff was security for Maxwell for over $2,100; that on the 21st day of April, 1887, Maxwell applied to Graff to aid him in raising an additional amount with which to meet claims then pressing him; that Graff declined to aid him in raising the sum needed, and insisted on being secured against loss by reason of his then existing liability; that Maxwell agreed to give him a mortgage on his stock in trade, this agreement being made in the forenoon; that about 1 o'clock the mortgage was executed and delivered to Graff; that between 4 and 5 o'clock of the same day the deed of assignment was executed, Graff being named as assignee. Maxwell testifies that when he agreed to give the mortgage to Graff, and when the same was executed, he did not intend to make an assignment, and aside from the fact that the mortgage and assignment were executed within a few hours of each other, there is nothing in the evidence tending to show that when the mortgage was executed, Maxwell intended to execute the assignment. On the contrary, the facts sustain Maxwell's testimony in this particular, and it must be held that when the mortgage was executed, Maxwell did not contemplate making an assignment. The mortgage and deed of assignment do not, therefore, form parts of one general disposition of the debtor's property, and the execution of the former does not invalidate the latter.

The next objection urged against the validity of the assignment is that in fact it was intended to hinder and delay creditors, and thereby secure an advantage to the assignor. In support of this objection, reliance is had upon the testimony of Maxwell to the effect that when he made the assignment he believed that he had property enough to pay his debts

and leave him a surplus of $5,000 or more. Conveyances, in fact made to hinder and delay creditors, are voidable at the option of the latter, no matter in what form the conveyances may be clothed. Creditors have the right to subject the property of their debtors to the payment of the debts justly due them, and to use the usual legal process to that end. If the debtor, for the purpose of defeating or delaying the creditor in the collection of his claim, transfers his property to another, such transfer is a fraudulent act on part of the debtor. Even though the conveyance by the debtor may be ostensibly for the benefit of creditors, yet if in fact the intent of the debtor and the necessary result of the conveyance is to hinder and delay creditors, it may be voidable by them. Thus, if a person having property more than sufficient to pay his debts if sold by ordinary judicial process, but not being able to readily convert it into money, should execute a general assignment, ostensiby for the benefit of creditors, but in reality for the purpose of delaying the seizure and sale of his property by judicial process, it might be that such an assignment would be held invalid, on the ground that it was not executed for the protection and benefit of creditors, but in reality for the purpose of delaying them. *Ogden* v. *Peters*, 21 N. Y. 24; *Angell* v. *Rosenbury*, 12 Mich. 242; *Van Nest* v. *Yoe*, 1 Sandf. Ch. 4. Counsel for plaintiffs, in a very able argument, has sought to show that this case falls within the rule recognized in these authorities, and it is not to be denied that they give strong support to his contention. The evidence, however, in the present case, fails to show that Maxwell had any intent to unjustly hinder or delay creditors in making the assignment. He testifies, it is true, that he thought he had enough property, if it was not sacrificed to pay his debts in full and have a surplus of from $5,000 to $8,000, to be returned to him, and that he wished to make the surplus as large as possible. In view of the real state of his affairs, it is difficult to see how he could have deluded himself into believing that any surplus could be realized after paying his debts; yet he testifies that he did so believe, and it is doubtless true that he believed that if he made the assignment his property would be sold to better advantage than if it was seized and sold under executions. In fact, the motives that actuated Maxwell in making the assignment, are very clearly set forth in the following answer made by him in giving his testimony:

"I want further to say as to my motives in making the assignment, I wanted to make my funds go as far as possible. I thought I had property enough to pay my debts, and have property left. I could not decide any better way, and was compelled to do something, and this was the safest, fairest, and best way for all parties,—my creditors and myself, too,—and it was to pay all my debts, in the quickest, and least expensive way, that made me assign."

The argument for plaintiffs is that the assignment was made in reality in the interest of the debtor, and adversely to the creditors. If this were true, as a matter of fact, there would be force in the argument based thereon, but the evidence fails to sustain the assumption of fact. To invalidate a conveyance of property by a debtor, it must appear that it was made to defraud, hinder, or delay creditors. The fact that the convey-

ance was made to prevent a sacrifice of the property, does not necessarily show that it was made to hinder or delay creditors. It is the duty of a debtor, when he finds himself insolvent, to make the best disposition of his property possible, so that his creditors may realize the full value thereof. The real interest of the debtor and of the creditors is identical in this particular; and so long as the disposition of the property is made for the purpose of realizing its value, it cannot be said that such disposition is adverse to the rights of the creditors. To make it such it must appear that the intent of the debtor in making the conveyance was to hinder and delay the creditors. In the present case it wholly fails to appear that such was the intent of the debtor, or that in fact such has been the result. The plaintiffs obtained judgment against Maxwell at this term of court; and when the judgment was rendered, the property had been sold by the assignee, and the money is in hand to meet the judgment, if the plaintiffs have a right thereto. In making the assignment, Maxwell made no attempt to restrict or control the sale of his property. He conveyed it to his assignee with the intent that it should, as speedily as possible, be converted into money, and the proceeds be applied in payment of his debts. There is no evidence in the case from which it can be inferred that he expected or hoped for a delay in selling the property, or that he intended to use the fact of the assignment as a means of forcing a compromise with his creditors. His intent in making the assignment was to have the property sold to the best advantage, the proceeds to be applied to the payment of his debts. It was not his intent to secure delay in the sale of his property. If in fact his property would be sold to better advantage—that is for a better price—by the assignee than it would if it had been sold piecemeal on executions in favor of the creditors, then the latter would be benefited by the conveyance. It will not do to hold that, because Maxwell believed in making the assignment that by such disposition of his property it would be sold to the best advantage, and realize enough to pay his creditors in full, leaving a considerable surplus to be returned to him, the assignment is thereby rendered fraudulent as to creditors. It is not a fraud upon creditors for an insolvent debtor to make such a disposition of his property as to insure the sale thereof for the largest possible price, and the application thereof to the payment of all creditors, in proportion to the sums due them, even if the debtor has the hope or belief that the property may sell for enough to leave him a surplus after paying his debts in full. The debtor has the right to prevent a sacrifice of his property, in his own interest as well as in that of his creditors, if he can do so without unjustly hindering or delaying his creditors. Each case must, of course, be determined in the light of the facts pertaining thereto. Under the statutes of Iowa, an insolvent debtor has the right to make a general assignment for the benefit of his creditors, even if by so doing he prevents a particular creditor from making a levy upon his property, and thereby securing a preference over other creditors. Such an assignment cannot be defeated at the suit of one or more creditors, unless it be shown that in the making thereof the assignor sought to hinder, delay, or defraud

his creditors, and this fraudulent intent must be established by fair evidence. In the present case, the facts developed in the evidence fail to show any such wrongful purpose on part of the assignor.

It is also claimed that the fraudulent character of the assignment is evinced by the fact that Maxwell included in the rest of his debts, sums alleged to be due to his two sons and daughter, for services rendered by them in carrying on the business of the father. It is not disputed that the sons and daughter had for years aided in the business, acting as clerks. It does not appear that there was any agreement as to the amount of remuneration to be paid. The father and the sons and daughter testify that there was a general understanding that the children were to be remunerated. Whether in fact any legal claim existed in favor of the children is, to say the least, very doubtful; but, on the other hand, a strong equitable claim certainly existed in favor of the children as between them and their father. They had given years of time in aid of the business, and it is entirely reasonable to suppose that there was a general understanding that they were to be benefited thereby by receiving an advancement from the father. When the assignment was made, it appears that Maxwell discussed the question with his attorney, whether he should list the children among his creditors, and was advised that it would do no harm, as it would be for the court to determine whether they were entitled to share in the proceeds of the assignment. The evidence does not show that the claims of the children were included in the list of creditors for the purpose of enabling Maxwell to secure to himself any share or portion of his property, nor that they were included for the purpose of enabling Maxwell to force or secure a compromise with his other creditors. The question is narrowed down to the proposition whether placing the names of the children among the list of creditors with a statement of the amounts that might be due them, if they can claim to be creditors, should be held to show fraud in making the assignment, and thereby defeat it. The question of the legality of the claim of the children is open to investigation and decision in the court wherein the assignment was filed. The creditors are not bound, nor is the assignee, by the act of Maxwell. The fact that he included in the list of his creditors the names of his sons and daughter, does not necessarily show an intent on his part to work a fraud upon his creditors. Whether they have a just claim is an open question. Before the children can entitle themselves to a share in the proceeds of the property, they must establish the validity of their claims. If their names had not been included in the list of creditors, they would have still had the right to file their claims with the assignee; and including them in the list does not confer any advantage on them, nor disadvantage upon the creditors. Under the facts disclosed in the evidence it cannot be held that the act of Maxwell in including the names of his children in the list of creditors, even if it should be ultimately held that they are not creditors, constitutes a fraud invalidating the assignment.

A further objection to the assignment is based upon the fact that on the day of its execution, Maxwell took out of his safe, notes of the face

value of $250, and handed them to his wife. He testifies that in September previous he had borrowed from his wife $275, which money had come to her from a legacy left her; that he told her at that time she could have as security the notes then on hand, and enough to be added, as they were obtained, to secure the repayment of the sum due; that the notes were put in a bundle, and placed in the safe as her property; that on the day he executed the mortgage to Graff, but before the execution of the assignment, he took the notes from the safe, and gave them to his wife; that about $100 has been realized from them, and that there is not value enough in them to pay the amount borrowed from his wife. It is not disputed that the money was borrowed by Maxwell as stated, and the only point that can be made is that the giving the notes to the wife, was preferring her over other creditors. If the testimony of Maxwell is true, that he set apart the bundle of notes in September preceding the day of the assignment, then the giving the security was not part of the general disposition of his property in contemplation when he made the assignment; and this would be true, even though some notes were subsequently added thereto, for that would only be carrying out the agreement made in September. While the mode of the transfer of the notes in question is certainly amenable to criticism, and probably could not be sustained against creditors who might have attached the same while not in the actual possession of Mrs. Maxwell, yet that does not justify the court in holding that the transaction is a fraud of such a nature as to defeat the assignment.

It appearing, therefore, that the assignment to Valentine Graff is valid and binding, it follows that judgment must be entered in favor of the garnishee and intervenor; and it is so ordered.